# CASES DETERMINED

IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### FEBRUARY TERM, 1878.

---

## THE STATE, EX REL. JACOB J. VAN RIPER ET AL., v. CHARLES H. PARSONS ET AL.

1. The constitutional amendment that prohibits the enactment of special and local laws in certain cases, applies to laws regulating the internal affairs of cities, as well as those of counties.
2. Such matters are now required to be regulated by general laws, in all cases in which such course is practicable.
3. Within the sense of these prohibitory clauses, a general law as contra-distinguished from one special or local, is a law that embraces a class of subjects or places, and does not omit any subject or place naturally belonging to such class.
4. When a legislative end, within this department, cannot be effected by a general law, a special or local act may be resorted to for that purpose, as heretofore.
5. In a proceeding by *quo warranto*, if the ground of information is that a law, in point of fact, will apply to but a single city, and is therefore

Van Riper v. Parsons.

local, such information must set forth the facts in a traversable form, showing this to be the situation.

On demurrer.

By the charter of Jersey City, passed in 1871, provision was made for the appointment by the senate and general assembly, in joint meeting, of a fire board, and certain other municipal boards.

On March 6th, 1877, (*Laws*, 1877, *p.* 54,) an act was passed, entitled "An act concerning commissioners to regulate municipal affairs," which provided for abolishing all laws in reference to legislative commissioners, and terminating the offices of the legislative commissioners then in existence, and for substituting therefor new boards, to be elected by the people.

Under this latter act an election was held in Jersey City, and the defendants were elected members of the fire board in lieu of the legislative commissioners. There was no question made with respect to the fairness and formality of this election.

The present proceeding is an information in the name of the attorney-general, in the nature of a *quo warranto*, charging that the defendants usurp the office to which they were thus elected.

Argued at November Term, 1877, before BEASLEY, CHIEF JUSTICE, and Justices DEPUE, VAN SYCKEL and KNAPP.

For the relators, *J. B. Vredenburgh, Wm. A. Lewis* and *Cortlandt Parker.*

For the defendants, *Leon Abbett.*

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE. The purpose of this proceeding is to test the constitutionality of the act of the legislature

passed on the 6th day of March, in the year 1877, entitled "An act concerning commissioners to regulate municipal affairs."

The law thus brought under our cognizance is composed of two sections, the first of which declares " that such parts of all public, special and local laws as provide for the appointment of commissions or commissioners, by the senate and general assembly of the legislature, in joint meeting, to regulate municipal affairs in any city in this state, be and the same are hereby repealed ; " and the second section provides "that in all cases where the above repealing section shall operate in any city in this state, there shall be substituted, in lieu of each of the existing boards of said commissions or commissioners, to exercise all the powers heretofore conferred upon such commissions or commissioners, a board to consist of six persons, namely, one shall be chosen by the electors in each aldermanic district in said city, who shall be a qualified voter of said city." The rest of this latter section consists of regulations touching the mode of canvassing the votes at the election thus authorized, or designating the terms of office and the salaries of the officers thus to be chosen.

Against this law thus summarized, the principal exception that has been urged is, that it is, in substance and effect, special and local, and consequently is in conflict with one of the recent amendments of the constitution of the state. The provision of the primary law thus invoked is Clause II., § VII., of Article IV., and which, so far as relates to the present subject, is in these words, viz.: " The legislature shall not pass private, local or special laws in any of the following enumerated cases, that is to say: * * * Regulating the internal affairs of towns and counties ; appointing local officers or commissions to regulate municipal affairs." And again, subsequently, in the same clause, the words are, " the legislature shall pass no special act conferring corporate powers, but they shall pass general laws, under which corporations may be organized and corporate powers of every

nature obtained, subject, nevertheless, to repeal or alteration at the will of the legislature."

But before proceeding to discuss the question thus raised by the counsel of the relators, it is necessary to determine whether these clauses of the constitution just recited have any applicability to the present case, for it is argued in behalf of the defendants that these prohibitions of the organic law do not prevent special legislation with respect to the cities of the state, but such only as regulates "the internal affairs of towns and counties." The contention is, that the word "towns" does not embrace "cities." But this argument is founded on the false basis of looking only at the letter of the law, and turning away from its spirit. It is true that if the letter of the law were absolutely unambiguous and definite, and were susceptible of but a single meaning, the clause would have to be read in such sense, no matter to what futility it might lead. But such is not this case; the word "town" has no such fixed signification as this, for though in its narrower sense it denotes something other than a city, in its broader scope it comprehends such a municipality. Mr. Tomlyn, in his law dictionary, under the title "Town," says: "Under the name of a town or village, boroughs, and, it is said, cities are contained, for every borough or city is a town." Lord Coke, in 1 *Inst.* 116, showing the capaciousness of the term, has this language: "And it appeareth by Littleton, that a town is the *genus*, and a borough is the *species*." Bouvier's definition of the word city is, "a town incorporated by that name." These authorities suffice to show that the term in question is sufficiently elastic to take in, when put to some of its uses, the institution denoted by the term "city." Nor is the force of this consideration countervailed by the fact that some of the local governments in this state are incorporated under the designation of towns, and that others, by the same means, are denominated cities. Such, unquestionably, has been the practice, as appears on the pages of our statute-book, and it is this usage that has occasioned the ambiguity that is inherent in this phrase in the constitution. But this uncertainty

obtains only so long as we yield our minds to the rigor of verbal definitions; for when once we emancipate ourselves from such bondage, and look at the purpose of this law, all doubt is at an end. When we find that the adoption of the narrow signification of the term used will lead to positive absurdity, and that the reception of the word in its wider import is attended with the establishment of a rule of public policy, both wise and salutary, it is not difficult to make choice between the alternatives. The object of the constitutional regulation is manifest. It was to exterminate, root and branch, special and local legislation, and to substitute general law in the place of it, in every instance in which such substitution could be effected. This is conspicuously apparent, for it is written in the general frame of the section, and in all of its specifications. The evils that had been inflicted under the guise of laws operative only within certain areas, had been of long standing, and were of the most serious character; and I think it is not too much to say that they constituted one of the principal causes that led to the project, recently carried into effect, of amending the constitution of the state. Experience had conclusively shown that the system itself was vicious, that permitted a city, or other political district, to be governed by laws applicable to it alone, such laws being enacted by persons having no particular interest in such locality, and having no constituency living within its bounds, to whom they were accountable for the measures to which they gave their sanction. This, in truth, was but one remove from the oppression of being governed by strangers. The result was such as might have been anticipated: laws were to be had for the asking by scheming persons, that were subversive of the rights of property, and which tended to the most reckless expenditure of the public moneys, so that the debts of some of these public bodies accumulated to such a degree as to threaten them with insolvency. Besides these grievances there were others of a lesser magnitude, it is true, but which were, nevertheless, the sources of much vexation and inconvenience. Among these minor mischiefs

was the practice of amending and supplementing municipal charters with a profusion that knew no bounds, the consequence being that the law of this department was kept in a state of constant flux and transition, so as to make the consolidation of it into a system, by judicial decision, an impossibility. These, and others of a similar cast, were the mischiefs that the constitutional supplement in question was intended to eradicate; and as it is obvious that they were mischiefs that flourished in their rankest and most luxuriant form in those local governments in which the wealth and population were the greatest, it would, assuredly, be a surprising result to find that these were the places to which the remedy was not extended. That it was the design of the framers of this amendatory clause, and of the people who, by their votes, accepted it, to permit special legislation, with all its enormous evils, to prevail with respect to those opulent and well-populated districts which bear the corporate title of city, and to prohibit it with respect to those few and inconsiderable places entitled "towns," is a proposition that seems to me scarcely to assume the guise of plausibility. Such an intention would be so absurd that it would border on the ridiculous, and would be little short of the folly of administering medicine, not to the patient, but to his next friend. The result seems to be this: the acceptance of the word "town" in this clause, in its narrowest sense, frustrates, in a great measure, the object of the provision; while the acceptance of it in its broader signification will effectuate such purpose. Under these conditions, it would seem, therefore, the dictate of common sense to give to the term a scope comprehensive of city, and I know of no rule of law that would not accord with such a course.

In short, in my opinion the clause in question seems to have been provided with the intention to require that, for the future, all legislative regulation of the internal affairs of cities should be the creatures, whenever practicable, of general laws framed for the purpose. This is a domain from which special and local legislation is utterly excluded whenever the legis-.

lative end can be effected by a general law. The presence of such a provision in the fundamental law of the state would seem imperatively to demand the re-organization, under one general system, of the various municipal governments that now exist. As the present institutions of this kind are susceptible, except in rare cases, of improvement or alteration only by means of general enactments, it is safe to say that, until such a step be taken, the greatest embarrassment and difficulty will attend the administration of these local establishments.

This view of the effect of the first of the constitutional clauses above cited renders is unnecessary to consider, at the present time, the scope and operation of the second of such clauses. Succeeding on this first point, and standing on the vantage ground thus conceded to them, the counsel of the relators in their arguments assumed two positions: first, that the statute now in question must, upon judicial inspection, be pronounced to be a special and local act; and, second, this first contention failing, that, in point of fact, this act can apply to but a single city, and therefore is, on that account, a special and local enactment.

The inquiry into the operative scope of this law is important in the present discussion, because, if the act be a local or special one, then it would be necessary to consider the effect of that other clause of the constitution that requires a notice to be given of an intention to apply for the enactment of any local or special law. That any such notice was given in this instance is expressly denied in the information in this case.

First, then, is this statute, obviously and upon judicial view of its contents, a local or special law?

In point of form it is manifest that this act does not belong to such a category. It imports generality of provision in all its parts; its title is general, embracing all commissioners appointed by the legislature to regulate municipal affairs, so, in its body, it repeals such parts of all public, special or local laws as provide for the appointment of such commissioners, and substitutes for such officers others, to be selected by the

people. Upon the face of this law, therefore, the repealer is general, and the substitution of other agencies is equally so.

But it is said that, although such is the frame and aspect of this statute, still it must be regarded as local and special, as of necessity it can be applicable to but a few places of the state, inasmuch as it is well known that but few localities in the state have been subjected to the rule of legislative commissions. This contention assumes the truth of the hypothesis that a law that embraces but a few localities, or a small number of objects, is not a general, but a special or local law. But I think there is a mistake in this. The terms "general law" do not import universality in the subjects or operation of such law. The constitutional clause in question calls for the enactment, in this particular field of legislation, of general acts, but such so-called general acts are, for the most part, special and local in their effect and applicability, provided we put the widest possible signification on the terms special and local. But these two latter terms do not carry with them such a compass of meaning as this, as they stand in the clause of the constitution now under consideration. If such were their scope, they would render almost every attempt at useful legislation abortive. A law settling the methods by which all railroads should become incorporated would be special in the sense that it would be confined in its operation to but a single kind of corporations, and so a law would be local, by this same test, that should provide for the organization, under one system, of all the municipal governments in the state, as such a law would manifestly have a restricted effect with respect to locality. But who, conversant with the usage touching these terms, would venture the assertion that such statutes as these would not be general laws? All legislation is based, of necessity, on a classification of its subjects, and when such classification is fairly made, and the legislation founded upon it is appropriate to such classification, such legislation is as legitimate now as it would have been prior to the recent amendments to the constitution. My theory is, that if a set of objects be fairly classified, a law embracing them will be a

general one, and in all respects unobjectionable; but undoubtedly, if the classification be illusive, being contrived with a view of escaping the constitutional restriction, it can lend no support to the legislation connected with it. As, for example, a statute declaring that all cities containing a population over a certain number shall have a given number of voting places, and all cities containing a lesser number shall have a prescribed lesser number, would be, to my mind, obviously legal, because the classes of persons thus distinguished from each other would naturally stand upon a different footing with respect to the particular subject to which such legislation related; but if a law, based on the same classifications, should provide that the former of such classes should have a certain system of laying out streets, and the latter a different system, such a classification would be clearly illusive, inasmuch as the law thus enacted would bear no affinity to the qualities or attributes forming the basis of classification. Interdicted local and special laws are all those that rest on a false or deficient classification; their vice is that they do not embrace all the class to which they are naturally related; they create preference and establish inequalities; they apply to persons, things or places possessed of certain qualities or situations, and exclude from their effect other persons, things or places which are not dissimilar in these respects. The present law, therefore, is not objectionable on the former of the grounds assigned—that in its operation it must necessarily be confined to certain localities. As it does not exclude from its sway or effect any place or subject belonging to the class to which it relates, it is, upon its face, a general, and not a local or special law, within the clause of the constitution now under consideration.

The second objection above noted to the statute in question is that, in point of fact, it applies to but a single place, that is, to Jersey City, and therefore, being thus local and special, it is invalid for the want of a notice of an intention to apply for its passage.

In laboring this point in their argument, the counsel of the

relators seemed to incline to the conclusion that a special or local law could in no case be passed, the purpose of which was to regulate the internal affairs of any municipality. But I cannot agree to this view. According to my reading of the constitutional clause in question, its purpose was not to limit legislation, but to forbid only the doing, by special or local laws, those things that can be done by general laws. The provision relates to the methods and not to the substance of legislation; and the substitution of general laws in the stead of those that are special or local, necessarily indicates the limits and extent of the prohibition: for as the mandate is to do, by general legislation, that which is interdicted to special or local legislation, it seems unavoidably to follow that it is only those things that can be accomplished by the former method that are forbidden to the latter method. The intent here, I think, is perfectly plain, and it was to require, within this department, all things that could be effected by general statutes, to be effected in that way; but there was no intent to abrogate the legislative power outside of this field. The opposite interpretation would be full of impracticabilities, not to say absurdities. By its prevalence, the peculiar imperfections inherent in the frame of any existing public corporation would at once be made unalterable and irremediable; the boundary of every city, township and county would become insusceptible of change, and the constitution of such bodies, with respect to matters unique, and therefore not to be reached by general laws, would be beyond the hand of improvement or modification. Indeed, the present case, if we assume that this statute applies to Jersey City alone, and is, on that account, to be regarded as special and local, and consequently forbidden, would stand as a conspicuous example of the evils that would result; for although, in this same constitutional provision, the ruling of particular places by legislative commissions is denounced in the form of a prohibitory clause, the success of the view set up would be to establish such a mode of government, so long as our organic law should retain its present characteristics, in the only place in which it is said,

Fink v. Newark.

at present, to exist. The correct interpretation of the passage, as already denoted, keeps it clear of any such hurtful efficiency.

But it is further, and in the last place, urged that as this statute can apply to Jersey City alone, it is, at all events, special and local, within the effect of that other provision of the constitution which exacts a notice of an intention to make application to the legislature for bills of this character. *Art. IV.*, § 7, *pl.* 9. But unfortunately it is, in this information, assumed, without the necessary showing of facts, that this law has this singleness of applicability. This pleading shows that the defendants are clothed with office by force of a popular election, duly held in accordance with this legislative act, and as, under such circumstances, the regularity and validity of such act will be strongly implied, the facts necessary to vacate it must be set forth in a direct and traversable form. This has not, in this case, been done. An allegation that the statute is special and local as to Jersey City is not the statement of a fact, but a naked inference as to the law. The question, therefore, that was discussed, and which was founded on the assumption that the present law was operative in but a single place, cannot be considered or disposed of upon the record as it is now presented to our attention.

As the pleadings at present stand, the demurrer must be sustained.