165 N.J. Super. 98 (1978)
397 A.2d 719
EDWARD F. CLARK, JR., COUNTY EXECUTIVE OF THE COUNTY OF HUDSON, JOSEPH J. SIMUNOVICH, ANNE H. O'MALLEY, ANGELO A. CIFELLI, GLENN D. CUNNINGHAM, VINCENT J. FUSILLI, SAMUEL D. KAYE, MORRIS T. LONGO, PETER M. MOCCO AND PETER J. ZAMPELLA, INDIVIDUALLY AND AS MEMBERS OF THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF HUDSON, AND THE COUNTY OF HUDSON, PLAINTIFFS,
v.
BRENDAN T. BYRNE, GOVERNOR OF THE STATE OF NEW JERSEY, THE NEW JERSEY LEGISLATURE, AND JEREMIAH F. O'CONNOR, DIRECTOR OF THE BOARD OF CHOSEN FREEHOLDERS OF THE COUNTY OF BERGEN, DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 31, 1978.
*101 Mr. Harold J. Ruvoldt, Jr., Hudson County Counsel, for Plaintiffs.
Mr. Michael S. Bokar, Deputy Attorney General, for Defendants Brendan T. Byrne, Governor of the State of New Jersey and the New Jersey Legislature (Mr. John J. Degnan, Attorney General, attorney).
*102 Mr. Vincent P. Rigolosi, Bergen County Counsel, for Defendant Jerimiah F. O'Connor, Director of the Board of Chosen Freeholders of the County of Bergen.
O'BRIEN, A.J.S.C.
By Orders dated December 14, 1971 and January 24, February 17 and April 10, 1972 the Chief Justice of the Supreme Court transferred a total of 600 cases pending on the combined civil calendars of the Superior and County Courts in Hudson County to Bergen County for trial. At the time there was no statutory provision relating to the transfer of cases from one county to another, nor for payment in connection with the disposition thereof.
By chapter 271 of the Laws of 1973, N.J.S.A. 2A:11-5.1 and 5.2 was enacted to "take effect immediately and shall apply to cases transferred on or after [July 1, 1972]." This statute authorizes such transfers by order of the Chief Justice and provides for payment to the county of transfer (transferee county) by the county from which the cases have been transferred (transferor county).
On August 19, 1975 Bergen County forwarded a voucher in the amount of $62,000 to Hudson County, seeking payment for the disposition of 616 transferred cases. This sum represents one-half of the claim for reimbursement as certified to the Administrative Director of the Courts by the Assignment Judge of Bergen County. The State has paid the other one-half. (N.J.S.A. 2A:11-5.2 was amended by the Laws of 1975, c. 321, § 1, effective February 20, 1976, to provide for payment by the transferor county of the entire amount.)
By letter dated October 29, 1975 Hudson County Counsel pointed out that N.J.S.A. 2A:11-5.1 applied only to cases transferred on or after July 1, 1972. Since the 616 cases had been transferred between December 20, 1971 and April 10, 1972 they were not covered by this statute. Thus, Hudson refused to pay the voucher from Bergen.
The matter was in this posture when, on March 29, 1977 by chapter 48 of the Laws of 1977, N.J.S.A. 2A:11-5.1 was *103 amended to provide that the statute apply to cases transferred on or after December 1, 1971. The statement accompanying this bill reads as follows:
Excessive court case loads in the counties of Hudson and Union in the latter part of 1971 and early 1972 necessitated not only the assignment of additional judges but also the attainment of additional courtroom facilities and personnel. To accomplish this end, the Chief Justice of the Supreme Court ordered the transfer of portions of the case loads to adjoining or nearby counties. It was recognized in making these transfers that a financial burden was being placed upon the transferee counties for which they should be reimbursed. Accordingly legislation was proposed providing for such reimbursement for all cases transferred on or after January 1, 1972. In November, 1972, Senate Bill No. 1127 and Assembly Bill No. 1457 were introduced to accomplish this purpose. In transcribing the copy for Senate Bill No. 1127, the date of January 1, 1972 was inadvertently changed to July 1, 1972. This error did not occur in transcribing the copy for Assembly Bill No. 1457. Senate Bill No. 1127 was enacted into law (P.L. 1973, c. 271; C. 2A:11-5.1 and C. 2A:11-5.2) before the error was discovered.
It is the purpose of this bill not only to correct that error and to authorize and to provide for the reimbursement of the counties properly entitled thereto, but also to remove any doubt that the first Order of Transfer which was made as of December 14, 1971, is also included within the provisions of this bill.
Plaintiffs seek a declaration that N.J.S.A. 2A:11-5.1 and 5.2, as amended, "violates the legislative and constitutional scheme for paying court costs." Defendant O'Connor, as Director of the Board of Chosen Freeholders of the County of Bergen, seeks judgment directing Hudson County to remit to Bergen County the $62,000, together with interest.
Initially this court observed a potential conflict in hearing this matter. At the time of the transfers in question I sat as a judge of the Bergen County Court and in fact heard some of the transferred cases. Presently I am a resident and taxpayer of Bergen County, as well as the assignment judge of Hudson County. However, all parties have waived any objection and the court feels no conflict.

*104 I
Plaintiffs maintain that N.J.S.A. 2A:11-5.1 and 5.2, as amended, is unconstitutional as special legislation which failed to comply with the constitutional procedure for enactment. It is not clear whether they concede the original enactment to be general rather than special legislation. The argument made, however, would appear to have equal application to the original enactment, as well as to the amendment in 1977.
N.J. Const. (1947), Art. IV, § VII, par. 7, provides:
No general law shall embrace any provision of a private, special or local character.
Art. IV, § VII, par 8, provides in pertinent part that
No private, special or local law shall be passed unless public notice of the intention to apply therefore, and of the general object thereof, shall have been previously given.
Art. IV, § VII, par. 9, sets forth a series of subjects upon which the Legislature shall not pass any private, special or local laws. Art. IV, § VII, par. 10, provides for petition by counties or municipalities to enact special laws regulating internal affairs.
The principles applicable to the determination of whether a law is general or special, within the meaning of the above constitutional provisions, are well established. Where the constitutionality of a statute is challenged as being a special law there is a strong presumption that the statute is constitutional. It will not be declared void unless its repugnancy to the Constitution is clear beyond a reasonable doubt. In determining whether a law is general or special it is what is excluded that is the determining factor, and not what is included. If no one is excluded who should be encompassed, the law is general. The law must affect all of a group, who, bearing in mind the purposes of the legislation, are distinguished by characteristics sufficiently marked and important to make them a class by themselves. Harvey v. *105 Essex Cty. Bd. of Freeholders, 30 N.J. 381, 388 (1959). A classification established by a law challenged under the special legislation provisions of the Constitution will be sustained where the classification is reasonable, not arbitrary, and can be said to rest upon some rational basis justifying the distinction. Vreeland v. Byrne, 72 N.J. 292, 299 (1977): accord, Harvey, supra, 30 N.J. at pages 390, 391.
It is obvious that the statute in question does not possess the attributes of special legislation. It imposes the reimbursement obligation upon any county as to which the Chief Justice deems it necessary to enter a transfer order. The law is applicable to all counties falling within the discrete class. Since no county is excluded that should be encompassed, Harvey, supra, the law is plainly a general one. It should be noted in this regard that Hudson is not the only county that has been the object of a transfer order and accompanying reimbursement obligation under the statute. By order of January 22, 1973 the Chief Justice ordered the transfer to Bergen of older cases pending in eight counties, including Hudson, and on November 20 of the same year the court entered a similar order transferring cases from Camden to Salem County. Hudson did not transfer any cases under the January 22, 1973 order. None of the other counties involved has challenged the validity of the statute, or joined Hudson in the present litigation.
Plaintiffs acknowledge that merely because a small number of entities is affected, an otherwise general law is not converted into a special law. A statute may still be valid as a general law even if only one entity is involved. See Van Riper v. Parsons, 40 N.J.L. 1 (Sup. Ct. 1878), which affected only one community, or Williams v. Mayor, 289 U.S. 36, 53 S.Ct. 431, 77 L.Ed. 1015 (1932), where legislative relief to only one insolvent railroad was involved. See also, McDonald v. Bd. of Freeholders, 99 N.J.L. 393 (E. & A. 1923).
An argument available to Hudson County, though not raised, is that the March 29, 1977 amendment to N.J.S.A. *106 2A:11-5.1, by changing the effective date of that statute, is, standing alone, a special law. It is applied only to past action and affects only Hudson County. In other words, this one enactment, without regard to its retroactive application or to the fact that it is really an amendment of an existing valid statute, is special legislation. Despite the general language, the statute is aimed at only one specific entity.
There is no doubt in the court's mind that this change of effective dates was enacted with the Hudson-Bergen transfers in mind. Although the legislation was introduced by Bergen County Senators Feldman, Scardino, Skevin and Garamone, among those Senators voting in favor were Hudson County Senators Dugan, Musto and Tumulty.
The law did affect a very limited class. However, as discussed, this does not make a law invalid. All retroactively applied statutes will affect a closed class. Even the fact that the class may consist of only one does not render the law invalid. Such a statute would be invalid only if the affected class could contain more than one member, but the statute specifically limited its application to less than the full class. Harvey, supra. As the United States Supreme Court has recently held in an analogous context, a law may in appropriate circumstances create "a legitimate class of one * * *." Nixon v. Administrator of General Services, 433 U.S. 425, 97 S.Ct. 2777, 2805, 53 L.Ed.2d 867 (1977). See also Meadowlands Reg'l Develop. Agency v. State, 112 N.J. Super. 89, 100-104 (Ch. Div. 1970), aff'd 63 N.J. 35, 40 (1973).
Plaintiffs do not question the power of the Legislature to amend laws or apply them retroactively. Although the question of retroactivity was raised by the court and supplemental briefs have been filed thereon, plaintiffs have informed the court that they agree that the retroactive application of this statute does not by itself render it invalid.
Statutory language is generally not given a retroactive effect unless the words are so clear that no other interpretation *107 can be given, or if the legislative intent cannot be satisfied by prospective application alone. Kopczynski v. Camden Cty., 2 N.J. 419 (1949); Rothman v. Rothman, 65 N.J. 219, 224 (1974). In the enactment of N.J.S.A. 2A:11-5.1 and 5.2 the Legislature spoke clearly. The effective date, both originally and as amended, is prior to the dates of enactment.
However, even if procedurally valid, retroactive laws which impair the obligations of a contract, or are ex post facto or alter vested rights, are forbidden under the Federal Constitution. Pennsylvania Greyhound Lines v. Rosenthal, 14 N.J. 372 (1954). While the statute here under review is not an ex post facto law, nor does it alter vested rights, it may be argued that it impairs the obligation of a contract, to wit, an agreement between the counties to transfer cases for disposition without compensation.
If the contract here involved private parties, the Contract Clause argument might have some validity. But see Rothman v. Rothman, supra. However, municipalities, including counties, are subdivisions of the state and have no right to self-government that is beyond the legislative control of the State. The power of the State over the right of municipalities to act in a governmental capacity is unrestrained by the Contract Clause. Trenton v. New Jersey, 262 U.S. 182, 43 S.Ct. 534, 67 L.Ed. 937 (1923). A municipality may even be legislated out of existence without infringing the Contract Clause. Mt. Pleasant v. Beckwith, 100 U.S. 514, 25 L.Ed. 699 (1879).
Thus, even if a contract existed between Hudson and Bergen Counties at the time of the transfer, this court finds the subsequent alteration by the New Jersey Legislature in the exercise of its duty to act in the public interest, was not violative of the contract clause. The retroactive aspect of N.J.S.A. 2A:11-5.1 and 5.2 is no bar to its application.
The sole basis upon which plaintiffs argue that the statute under review constitutes special legislation is because it establishes *108 inequalities in a class created by the Governor and the Legislature. Plaintiffs contend that the classification created distinguishes between those counties which have excessive caseloads and those not having excessive caseloads. From this they argue that the basis for the difference is largely contingent upon whether the county courts have an adequate number of judges, and that the number of judges assigned to any county is controlled by the Governor with the consent of the Legislature, rather than by the county. By inaction, they say, the Governor and the Legislature can create the members of the class who form the transferor counties.
This argument is clearly specious. It is true that the Governor and/or Legislature may withhold judicial appointments for a particular county which may contribute to a case backlog in that county. However, this can be remedied by the Chief Justice other than by transferring cases. He has the authority to transfer judges from one assignment to another as need appears. N.J. Const. (1947), Art. VI, § VII, par. 2. Provision for reimbursement for the salary of any county judge so transferred to another county is provided for by statute, N.J.S.A. 2A:3-19.1.
If there has been a failure to appoint county judges in a particular county, such county has not had to pay 60% of the salaries that they otherwise would have been required to pay if such judges had been appointed. N.J.S.A. 2A:3-19. Assuming that the need to transfer cases under N.J.S.A. 2A:11-5.1 is dictated by a shortage of county judges, as suggested by plaintiffs, the equity of the statute is manifest when one considers that the transferee county, which presumably has sufficient county judges and is paying 60% of their salaries, will have them spend a portion of their time trying cases from another county.
There can be little question that the Bergen court system performed a service for Hudson. Judges paid by the county and by the State spent time disposing of Hudson cases. Court officers, stenographers, secretaries, clerks and administrative *109 personnel, paid by Bergen, also put in time to process the transferred cases. Hudson County argues that because Bergen had all of the personnel on hand there really was no financial loss. Yet, hours spent dealing with the transferred cases could have been spent disposing of Bergen cases. Residents of Bergen County with cases pending in their courts were delayed in reaching trial due to these extra cases. While it may be true that Bergen suffered no out-of-pocket costs due to the transfers, there were losses to the citizens of that county in the nature of time spent on Hudson cases.
Furthermore, the caseload problem in Hudson County resulting in the transfer orders may have been caused by a variety of other reasons, or a combination thereof, e.g., an increase in civil and criminal cases, a procession of long, involved cases consuming an inordinate number of judicial hours, or the temporary absence of some judges by reason of illness, and the like.
Lastly, it must be pointed out the statute is not aimed at the action of the Governor. It is the Chief Justice who transfers cases. As noted, he may take other steps to relieve excessive caseloads in particular counties, rather than transferring cases out of that county under the statute. If so, the reimbursement provisions would never come into play. Inaction by the Governor or the Legislature is not the event which triggers the operation of the statute. The suggestion that the Governor and Legislature possess the power by inaction to create and define a class of transferor counties subject to the statutory reimbursement duty is without foundation.
For the foregoing reasons the contention of the plaintiffs that N.J.S.A. 2A:11-5.1 and 5.2 constitutes special legislation is without merit.

II
Plaintiffs' second point, that the statute under review somehow "violates the constitutional and legislative formula for paying the cost of the Superior Court, Law Division," *110 defies understanding. In support they assert the same argument as under Point I. In 1971 and 1972 Hudson County "had an excessive overload of cases and an insufficient number of judges, as a result of which the Law Division judges had difficulty moving the volume of cases the county generated." Hudson County, they add, "fulfilled its part of the legislative formula by having court personnel and courtroom facilities available," but the Governor and Legislature failed to appoint sufficient judges.
The only citations for the proposition advanced are the constitutional provisions concerning appointment and payment of salaries of judges of the Superior Court, N.J. Const. (1947), Art. VI, § VI, par. 6, and statutory requirements that the county provide courtrooms, attendants, interpreters and secretaries. N.J.S.A. 2A:11-4, 9, 20, 29 and 34. What has been stated above under Point I has equal application to plaintiffs' second argument, which is seemingly redundant.
Additionally, the matter of appointment of judges and other public officers by the Governor and their confirmation by the Senate is a political question, committed to the exclusive discretion of the Executive and Legislative Branches. See, e.g., Passaic Cty. Bar Ass'n v. Hughes, 108 N.J. Super. 161 (Ch. Div. 1969); cf. State v. Robinson, 140 N.J. Super. 459, 470 (Law Div. 1976). There may be an infinite number of good reasons for a Governor not to make judicial appointments, or for a Legislature not to confirm appointments which have been made. These reasons are exclusively within the province of the Executive and Legislative Branches and not reviewable by the courts.
Plaintiffs have failed to demonstrate any factual or legal basis to sustain the argument advanced under Point II. The court finds it totally without merit.

III
In their supplemental brief plaintiffs argue that the 1977 amendment to N.J.S.A. 2A:11-5.1 is "a private, special *111 and local law relating to taxation, and so deals with a subject prohibited by the Legislature by N.J. Const. (1947), Art. IV, § VII, par. 9(6), which provides:
The Legislature shall not pass any private, special or local laws:

* * * * * * * *
(6) Relating to taxation or exemption therefrom.
It is argued that the effect of the statute is to impose a tax upon Hudson which will benefit only Bergen County. In support, plaintiff cites Jersey City v. Zink, 133 N.J.L. 437 (E. & A. 1945), which condemned arbitrary allotment of the revenue from one municipality to another.
For the reasons outlined under Point I hereof the court has concluded that the amendment to N.J.S.A. 2A:11-5.1 is a general and not a special law. Therefore the provisions of Art. IV, § VII, par. 9(6) are not applicable. Furthermore, as the court said in Meadowlands Reg'l Develop. Agency v. State, supra,
It is clear that the State is empowered to impose costs and expenses on its units of local government to fulfill a public purpose, even when the municipalities subject to the State's charge must raise money by taxation to pay the obligation so imposed * * *. [112 N.J. Super. at 109]
This proposition, said the court, is based upon "two well recognized principles," to wit, that municipalities and counties "are merely political subdivisions of the State and the legislative control over them is almost unlimited," and that "[a]ll taxes, whether levied for state, county or municipal purposes, are state taxes; they can be imposed by no other authority than that of the State. * * *" Ibid. See also, Robinson v. Cahill, supra, 62 N.J. at 502. ("Local government is simply an arm of the state with respect to the many state functions which the state decides shall be performed through local government.")

*112 IV
Finally, plaintiffs argue in their supplemental brief that a transferor county is only required to reimburse the transferee county for its "actual expenses" incurred in the disposition of transferred cases. N.J.S.A. 2A:11-5.1 provides in pertinent part:
* * * The county to which the transfer is made shall * * * be entitled to payment, by way of reimbursement for expenses in connection with the disposition thereof, of an amount to be computed as follows: (a) $50.00 per case, whether or not brought to trial; plus (b) $200.00 per case for each day or part thereof, of trial.
Plaintiffs contend that the clause relating to reimbursement controls and the dollar amounts specified are only the maximum amounts which may be charged.
The court finds no merit in this argument. The parenthetical clause, "by way of reimbursement for expenses in connection with the disposition thereof," is merely descriptive of the reason for payment. Isolated expressions cannot be invoked to defeat a reasonable construction. Loboda v. Clark Tp., 40 N.J. 424, 425 (1963). The court must examine the whole legislative enactment, not particular terms. The legislative language seems clear. There is no indication that the specified dollar amounts are intended to be maximums. Attempting to ascertain the "actual" expenses involved in the disposition of each individual transferred case would obviously be impossible, or at best administratively unworkable. Thus, the Legislature has provided a simple, workable formula for computation of the reimbursement.

Conclusion
After a thorough consideration of the briefs, supplemental briefs and argument of counsel, the court has concluded, for the reasons herein stated, that N.J.S.A. 2A:11-5.1 as originally enacted and as amended in 1977 is constitutional.
*113 Plaintiffs have named the Director of the Bergen County Board of Chosen Freeholders as a defendant, rather than the entity, Bergen County. Mr. O'Connor, the Director, has counterclaimed on behalf of the county seeking a direction that Hudson County remit to Bergen County the $62,000 claimed in the voucher submitted on August 19, 1975. No question has been raised as to the propriety of this procedure nor as to the standing of a director of a board of chosen freeholders to seek such relief. The court therefore will consider the counterclaim as a claim by Bergen County for the amount sought. Accordingly, pursuant to N.J.S.A. 2A:11-5.1 and 5.2 there will be a judgment in favor of the Director of the Bergen County Board of Chosen Freeholders, ordering plaintiff Hudson County to pay the sum of $62,000 to Bergen County.
The counterclaim of the Director also seeks interest on this sum. The claim was first made on August 19, 1975. At that time there was no statutory provision requiring such payment. It was not until the amendment of March 28, 1977 that the right of Bergen County to payment was authorized by statute. In view of the circumstances of the enactment of that statute retroactively requiring payment of a claim made many months before, it was appropriate that this should be challenged by Hudson County. Accordingly, no interest will be allowed.