THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, PLAINTIFF-RESPONDENT, v. GUTTENBERG RENT CONTROL BOARD AND HAROLD E. DEMELLIER, JR., RESPONDENT, AND MARION KLEIN, DEFENDANT-APPELLANT.

THE PRUDENTIAL INSURANCE COMPANY OF AMERICA, PLAINTIFF-RESPONDENT, v. MARION KLEIN, DEFENDANT-APPELLANT.

Superior Court of New Jersey
Appellate Division

Submitted April 7, 1987—Decided September 2, 1987.

Before Judges SKILLMAN and LANDAU.

*Robert C. Damm,* attorney for appellant Marion Klein (*Lynne Van Voorhis,* on the brief).

*Greenbaum, Rowe, Smith, Ravin, Davis & Bergstein,* attorneys for respondent, Prudential Insurance Company of America (*Bruce D. Greenberg,* on the brief).

No brief was filed on behalf of respondent Guttenberg Rent Control Board.

The opinion of the court was delivered by

LANDAU, J.S.C. (temporarily assigned).

██ This appeal tests whether the entire lump sum payment after death of a public sector pensioner should be considered as part of annual income for the purposes of determining whether the beneficiary, a senior citizen tenant, may be granted protected status from a condominium conversion plan under *N.J.S.A.* 2A:18–61.24(c) and *N.J.A.C.* 5:24–2.3(c). We conclude that the entire lump sum should not be considered for purposes of such income determination, and accordingly, reverse the trial court's contrary holding, but direct a remand for hearing and findings consistent with this opinion.

### FACTS AND PROCEDURAL HISTORY

On June 1, 1984, the Prudential Insurance Company of America (Prudential), brought an action for possession against appellant Marion Klein (Klein) in the Special Civil Part. Klein, age 64, was a tenant in a Guttenberg building known as Galaxy Towers then in conversion to condominium ownership. See, *N.J.S.A.* 2A:18–61.1(k). On June 19, 1984, that matter was transferred to the Law Division under *N.J.S.A.* 2A:18–60.

On June 12, 1984, the Guttenberg Rent Control Board purported to grant Klein protected tenancy status as a qualifying senior citizen. See *N.J.S.A.* 2A:18–61.22, *et seq.* Following the action of the Guttenberg Rent Control Board, Prudential insti-

tuted an action in lieu of prerogative writ challenging the Board's determination. This matter was consolidated with the suit for possession. Upon motion, the trial judge remanded the matter to the Board for a hearing, findings of fact and conclusions of law. A hearing was conducted and on July 29, 1985, the Board again granted protected tenancy status to Klein. This determination was reversed by the trial judge. Eviction was stayed pending appeal.

It is not disputed that the statutorily required notices of intent to convert, plan of conversion, and notice to quit were timely delivered to and received by Klein, and her late husband Herman, a former mayor of Guttenberg, who passed away prior to Klein's application for protected tenancy status. It is also clear that under the provisions of the "Senior Citizens And Disabled Protected Tenancy Act" (S.C.D.P.T.A.) (*N.J.S.A.* 2A:18–61.22 *et seq.*), Klein would otherwise be eligible for protection from the condominium conversion, subject to demonstrating that her "tenant's annual household income" for 1983, the last full calendar year before Klein's application, was less than $33,102.[1]

Under the applicable regulation, *N.J.A.C.* 5:24–2.3(b)(1)(i), income documentation may include, but is not limited to, copies of income tax returns, and certification of amounts received in social security payments *or in payments* "from other sources of non-taxable income." Under *N.J.A.C.* 5:24–2.3(c),

> taxable income shall include all income subject to the New Jersey Gross Income Tax, without allowance for any deductions or exemptions. Non-taxable income shall include without limitation, any excluded pension payments, any social security, SSI or Railroad Retirement payments, any payments from any public assistance program and any interest on tax exempt securities or accounts.

---

[1] *N.J.S.A.* 2A:18–61.28(c) establishes as a condition for eligibility that annual household income of those in the household at the time of application does not exceed an amount equal to three times the County per capita personal income, as reported by the Department of Labor and Industry. This formula produced a $33,102 figure for Hudson County in 1983.

For 1983, Klein reported gross income on her State income tax form in the amount of $191,737. This included a $182,240 lump sum received under the public pension plan of her deceased husband, representing the unpaid amount in his "account" payable to his beneficiary. Klein could not herself choose a form other than lump sum distribution. In 1983, she received social security benefits amounting to $8,800, and the 1983 New Jersey gross income tax return showed amounts said to be attributable to her husband's employment prior to death in the amount of $11,581.

*N.J.S.A.* 2A:18–61.24(c) defines "tenant's annual household income" as "... the total income from all sources during the last full calendar year for all members of the household who reside in the dwelling unit at the time the tenant applies for protected tenant status, whether or not such income is subject to taxation...." [2] In reversing the Board's grant of protected tenancy status the trial judge recognized that Klein had reported the $182,240 on her gross income tax return for 1983 and designated it as "other income." The trial judge found that the above quoted section demonstrated a clearly articulated legislative intent that, as reported 1983 income, the lump sum had to be considered in establishing eligibility for protected treatment. Moreover, the trial judge believed that the "controlling consideration is the 'actual financial situation' of the tenant," citing our opinion in *Edgewater Inv. Associates v. Borough of Edge-*

---

[2] The trial judge's letter opinion of February 7, 1986 stated the issue to be, "Does a lump sum payment under an insurance policy [*sic*] of $182,240 constitute 'income,'" [for purposes of the income criteria of the S.C.D.P.T.A. and its implementing regulations.] Actually, as above noted, the $182,240 was not a life insurance payment, but the lump sum payable to Klein as beneficiary of her late husband, a retired public employee, based upon the undistributed balance in his retirement "account." *N.J.S.A.* 54A:6–4 specifically excludes from the New Jersey gross income tax proceeds of life insurance contracts payable by reason of death and employees' death benefits paid by reason of death. The distinction is not material because *N.J.S.A.* 2A:18–61.24(c) comprehensively includes income not subject to taxation, as well as income which is so subject.

*water,* 201 *N.J.Super.* 267 (App.Div.1985) aff'd 103 *N.J.* 227 (1986), and the legislative intent discussed in *Radin v. Bartolomei,* 195 *N.J.Super.* 626 (Law Div.1984). The trial judge also relied on *Guttenberg S & L Ass'n v. Rivera,* 85 *N.J.* 617, 628 (1981), noting that he was required to take a dispassionate, thoroughly impartial view of the matter recognizing that "... it is not [the court's] function to devise protective measures for tenants, but it is [the court's] function to effectuate the legislative intent expressed in its enactment."

Concluding that Klein was not a senior citizen whose financial circumstances diminished her ability to obtain satisfactory comparable housing, based upon her actual financial situation, the trial judge enforced literally the statutory and regulatory provisions which appear to focus entirely on stated income from all sources, whether regular or not, during the year preceding the application. Thus, for example, a one-time life insurance death benefit payment of $25,000 which, coupled with social security payments, resulted in a total for the base year exceeding $33,102, would, under the trial judge's determination, render ineligible (and evictable) an otherwise qualified senior tenant. By contrast, a senior tenant with substantial other income, but less than $33,102, would be protected for 40 years if fortunate enough to have received a bequest or the proceeds of a $250,000 life policy, a year earlier than the base year.

We believe that the trial judge misread the message in *Edgewater,* where we observed that the S.C.D.P.T.A. "is not a model of clarity. Nevertheless, ... it must be construed consonant with the legislative purpose." 201 *N.J.Super.* at 284. There, a tenant had a substantial gross business income but a far smaller net business income. We held that it would be inequitable to construe the statute in a manner which sacrificed accuracy and fairness for the sake of simplicity. Thus, we required that net business income was to be utilized in determining whether a tenant qualified for protected tenancy status, in order that one who operated a business at a loss or at very little profit and had no other significant income would not be

found disqualified while an individual with a much higher actual fixed income might be deemed qualified. We found that such an approach would be plainly inconsistent with the articulated mandate that the legislation is remedial and is to be "liberally construed" *N.J.S.A.* 2A:18-61.39.[3]

*N.J.S.A.* 2A:18-61.23 sets forth certain legislative findings and declarations stating, in part, as follows:

> The Legislature finds that research studies have demonstrated that the forced eviction and relocation of elderly persons from their established homes and communities harm the mental and physical health of these senior citizens, and that these disruptions in the lives of older persons affect adversely the social, economic and cultural characteristics of communities of the State, and increase the costs borne by all State citizens in providing for their public health, safety and welfare. These conditions are particularly serious in light of the rising costs of home ownership, and are of increasing concern where rental housing is converted into condominiums or cooperatives which senior citizens on fixed limited incomes cannot afford, an occurrence which is becoming more and more frequent in this State under prevailing economic circumstances. The Legislature, therefore, declares that it is in the public interest of the State to avoid the forced eviction and relocation of senior citizen tenants wherever possible, specifically in those instances where rental housing market conditions and particular financial circumstances combine to diminish the ability of senior citizens to obtain satisfactory comparable housing within their established communities, and where the eviction action is the result not of any failure of the senior citizen tenant to abide by the terms of a lease or rental agreement, but of the owner's decision advantageously to dispose of residential property through the device of conversion to a condominium or cooperative....

It has been held that a remedial statute should not be read literally where such a reading is contrary to its purpose. *Piscataway Tp. Bd. of Ed. v. Caffiero*, 86 *N.J.* 308, 317 (1981). As our Supreme Court also observed, there is often no surer way to misread a statute than to read it literally, while ignoring the overall legislative intent. *Valerius v. City of Newark*, 84 *N.J.* 591, 598 (1980). A statute cannot be construed so as to lead to an unreasonable, absurd or anomalous result. *State v. Gill*, 47

---

[3]The Legislature has set forth in the S.C.D.P.T.A. an unusually comprehensive and extremely broad statement of its findings and declarations which complement the mandate for liberal construction in that act.

*N.J.* 441, 444 (1966); *Citizens for Chart. Change, Essex Cty. v. Caputo,* 151 *N.J.Super.* 286 (App.Div.1977).

We recognize that the trial judge may have been troubled by the fact that the initial grant of protected status to Klein, widow of Guttenberg's long-time mayor, was made *ex parte,* and may have been actuated in part by a sense of political obligation. This initial grant was properly remanded by the trial judge. Our judicial task is to scrutinize carefully the further record and to determine whether, notwithstanding this aura of possible bias, the statute was correctly interpreted.

We agree with Prudential and the trial judge that the issue is properly one of statutory interpretation and therefore one of law for the court. Thus, while the legal interpretation of the Guttenberg Rent Board is not controlling, neither this nor the possibility of bias should preclude us from determining that it reasonably construed the statute. For example, although the Board did not exclude that portion of Klein's 1983 income tax return which was attributable to the deceased spouse until it appeared that Klein might not qualify if it was left in the calculation, this action was correctly taken. Only amounts earned by household members at the time of application may be properly considered part of the pertinent income.

■ As in *Edgewater, supra,* we believe that the trial judge's literal construction of the Act failed to effectuate the plainly expressed legislative purpose to protect the rights of elderly persons of limited means. This is not a matter of substituting our view of an appropriate result for that of the Legislature. Rather, the Legislature has clearly articulated its intention, but omitted express consideration of the present problem. We disagree that the S.C.D.P.T.A. or the implementing regulations have specifically articulated an intention to include lump sum, non-repeated, distributions as the "income" to be considered for tenant protection purposes. Reading in such an interpretation is contrary to the statutory mandate to liberally construe the statute to effectuate its remedial purposes.

This does not mean, however, that no portion of such distribution may properly be considered part of income. Each lump sum case must be separately considered.

In this case, the pension death benefit presumably included a partial return of contributions, as well as an amount which exceeded contributions of the pensioner. Under the New Jersey tax law, the excess over contributions is the amount regarded as income. (*N.J.S.A.* 54A:6–10) It is the excess over contributions which is the real "lump sum." Inasmuch as this excess is all "income," it would be improper to consider only the earnings achievable from such excess over contributions as income. To achieve an equitable result, fair to Klein, and fair to other senior tenants who receive fixed income, the proper approach in this case should be to compute the amount of annuity actuarially available in 1983 for a female of her age at the then prevailing interest rate, out of the amount of lump sum pension benefit which exceeded the amount contributed. The whole amount of that theoretical annuity should be then added to other sources of income attributable to her, including social security, to produce the income from all sources in 1983.

There are undoubtedly other reasonable ways to approach the lump sum payment problem, while giving effect to the probable legislative intent. We perceive that an important aspect of that intent is to recognize all funds expected to be available to the senior citizen tenant on an annual basis, calculated in such a way as to forestall any incentive to conceal or transfer funds. We therefore urge that the Legislature and the Department of Community Affairs consider addressing this question by statute or regulation at an early date.

As to the present matter, we reverse and remand to the trial judge for the limited purpose of:

(1) Hearing evidence, or accepting a stipulation, as to the amount of lifetime annuity purchasable for Klein at the end of 1983 at then prevailing interest rates for such annuities from the amount by which the lump sum distribution exceeded pension contributions;

(2) Thereafter, computing the resulting total when this annual amount for 1983 is added to other items properly included in income for 1983. As noted above, the income of the deceased spouse was not properly included, because he was not resident at the time of application;

(3) If the 1983 annual income as so computed exceeds $33,-102, the application for protected tenancy should be denied and possession of the apartment awarded to Prudential. If the income so computed is below $33,102, protected tenancy status should be granted.

We do not retain jurisdiction.