EDGEWATER INVESTMENT ASSOCIATES, PLAINTIFF, v. BOROUGH OF EDGEWATER, MARTIN CONNETT, THEODORE VARVISOTIS, BLANCHE M. LANDER, GOODMAN SINGER, ELIZABETH GARBARINI, ANITA BROWN, IRVING EISEN, KAROLYN SIEGEL, SARAH MC CLELLAN, MACKLIN D. ROSEN, JAMES AND HILDA HENDRYX, ADOLPH AND VERA LEITNER, HAZEL GROB, PAUL AND GLORIA BELLA, EARLE AND BEATRICE FREEMAN, HARRIET WHITMAN, MORTON LESSER, SIGMUND SCHWARTZ, WALTER AND MARJORIE COHEN, LOUIS AND EVA SHARPE, MORTON AND SYLVIA SINGER, LESTER ESTERMAN, DEFENDANTS.

Superior Court of New Jersey
Chancery Division Hudson County

May 3, 1984.

*Raymond R. Wiss* for plaintiff, (*Winne, Banta, Rizzi, Hetherington & Basralian,* attorneys).

*John R. Hogan* for defendants Schwartz and Cohen.

*Robert T. Regan* for all defendants except Schwartz and Cohen (*McGuire & Regan,* attorneys).

TARLETON, J.S.C.

This case raises issues concerning the constitutionality, interpretation and application of the Senior Citizens and Disabled Protected Tenancy Act (the Act) *N.J.S.A.* 2A:18–61.22 *et seq.*

Edgewater Investment Associates instituted suit against the Borough of Edgewater (Borough) and a group of tenants residing in the Hudson Harbour apartment complex. It seeks alternative relief declaring that the Act is unconstitutional, it did not apply to its condominium and the tenants did not qualify for protected tenancy status. The case proceeded in three phases:

1) On cross motions for summary judgment, the retroactive portion of the Act, *N.J.S.A.* 2A:18–61.11(d)(1) & (2), was held constitutional and not violative of the impairment of contract or taking clauses of the United States Constitution.

2) On cross motions for summary judgment, protected tenancy status was denied to five tenants (Martin Connett, Macklin D. Rosen, Eva and Louis Sharpe, Beatrice and Earle Freeman, and Theodore Varvisotis). Four denials were based upon findings that each tenant's "annual household income" was in excess of the statutory criteria and one denial was based upon failure to meet the age qualification. Protected tenancy status was granted to five tenants (Hazel Grob, Elizabeth Garbarini, Anita Brown, Harriet Whitman and Morton Lesser) on the ground that they met all of the statutory criteria.

3) A plenary hearing was held on the protected tenancy status applications of Marjorie and Walter Cohen and Sigmund Schwartz. Schwartz' application was denied because his "annual household income" exceeded the statutory criteria; the Cohens' application was denied because it was not filed within a reasonable period of time and was deemed not in compliance with *N.J.S.A.* 2A:18–61.25, 27 & 28 as applied to the facts of this case.

## FACTUAL BACKGROUND

The apartment building in issue is a garden apartment complex known as Hudson Harbour Condominiums located at 1203 River Road, Edgewater, New Jersey. It consists of 251 dwelling units and was constructed in 1967. Hudson Harbour Associates purchased the complex in October 1980 and filed a condominium offering plan which was approved by the Department of Community Affairs on January 5, 1981. The premises was registered for conversion and notice of intention to convert to a condominium was served upon the tenants on January 12, 1981. On April 3, 1981 a three months' notice to quit and demand for possession was served on all tenants in accordance with the provisions of the then existing Anti-Eviction Act.

The Senior Citizens and Disabled Protected Tenancy Act became effective on July 27, 1981. The Department of Community Affairs then directed Hudson Harbour to serve all prospective purchasers and all existing tenants in the apartment complex with the notice of protected tenancy status called for by *N.J.S.A.* 2A:18–61.27. Hudson Harbour complied by mailings of October 5, 1981. It also amended its public offering statement to include warnings to prospective purchasers that pro-

tected tenancy status could be granted to existing tenants for an additional forty years. On January 19, 1982 Edgewater Investment Associates acquired the units which are the subject matter of this litigation from Hudson Harbour Associates.

## THE ACT

The most controversial portion of the Act is the retroactive provision appearing in *N.J.S.A.* 2A:18–61.11(d)(1) & (2). It affords our courts discretionary authority to grant protected tenancy status to qualified senior citizens or disabled persons if the court determines that the tenant is qualified. In pertinent part it provides:

... the court may invoke some or all of the provisions of the "Senior Citizens and Disabled Protected Tenancy Act" and grant to a tenant, pursuant to that amendatory and supplementary act, a protected tenancy period upon the court's determination that:

(1) The tenant would otherwise qualify as a senior citizen tenant or disabled tenant pursuant to that amendatory and supplementary act, except that the building or structure in which the dwelling unit is located was converted prior to the effective date of that amendatory and supplementary act; and

(2) The granting of the protected tenancy period as applied to the tenant, giving particular consideration to whether a unit was sold on or before the date that the amendatory and supplementary act takes effect to a bona fide individual purchaser who intended personally to occupy the unit, wo·ld not be violative of concepts of fundamental fairness or due process. Where a court declines to grant a protected tenancy status, it shall nevertheless order such hardships stays as authorized by subsections a. and b. of this section until comparable relocation housing is provided. The hardship relocation compensation alternative of subsection c. of this section shall not be applicable in this situation.

If protected tenancy status is granted, the tenant may remain in his apartment for an additional forty years. If not granted, the court may still authorize up to five one-year stays of eviction until the landlord furnishes comparable housing. However, unlike the provisions of the pre-existing Anti-Eviction Act, the landlord may not utilize the five month compensation buy-out provision of that Act. *N.J.S.A.* 2A:18–61.11(c).

The Act grants "protected tenancy status" to senior and disabled citizens who were "at least 62 years of age on the date

of the conversion recording." *N.J.S.A.* 2A:18–61.24(a). The tenant seeking protected tenancy status must apply "on or before the date of registration of conversion by the Department of Community Affairs," have an "annual household income" that does not exceed an amount equal to three times the county per capita personal income and have occupied the premises as his principal residence for the past two years. *N.J.S.A.* 2A:18–61.28.

Before the owner intending to register the building for conversion to condominium ownership may file his application for registration of conversion with the Department of Community Affairs, he must notify the "administrative agency or officer" responsible for administering the Act of his intention to file. Within ten days thereafter, the administrative agency or officer is required to notify each tenant in writing of the owner's intention to convert and "of the applicability of the provisions" of the Act and also furnish a written application form. The administrative agency or officer must then send each tenant a notice substantially in compliance with *N.J.S.A.* 2A:18–61.27.

Within thirty days after receiving an application for protected tenancy status, the administrative agency or officer responsible for administering the Act must make a determination of eligibility and send a notice of his decision to each applicant. *N.J.S.A.* 2A:18–61.28. No registration of conversion may be approved until the Department of Community Affairs receives proof that the administrative agency or officer has made protected tenancy status determinations and notified each tenant who has applied within the required sixty day period of the tenant's eligibility or lack of same. *N.J.S.A.* 2A:18–61.29.

No protected tenancy status may be granted until the owner has filed a conversion recording. It is automatically conferred when the tenant receives notice of eligibility and the landlord files the conversion recording. However, the conversion recording may not be filed until after the registration of conversion. *N.J.S.A.* 2A:18–61.30.

During the period of "protected tenancy" the owner may not institute any suit for eviction. *N.J.S.A.* 2A:18–61.24(h), 2A:18–61.1(k). However, protected tenancy status may be terminated if the unit is no longer the principal residence or if the tenant's annual household income exceeds three times the most recently reported county per capita personal income. *N.J.S.A.* 2A:18–61.32.

## CONSTITUTIONALITY OF ACT

In view of the January 30, 1984 decision of the Third Circuit Court of Appeals in *Troy Ltd. v. Renna,* 727 *F.*2d 287 (3d Cir.1984), no useful purpose would be served by reciting the rationale and cases relied upon to sustain my holding that the Act was constitutional. In *Troy Ltd.,* the Third Circuit reversed the district court's order granting partial summary judgment that the Act violated the impairment of contract and taking clauses of the Constitution.

Speaking for the Third Circuit, Judge Gibbons held that the retroactive portion of the Act was not facially unconstitutional either under Article I, Section 10 as an impairment of the obligation of contract or under the Fourteenth Amendment as the taking of property for public use without just compensation. This opinion examined in detail the challenged legislation and its effect on the preexisting Anti-Eviction Act, *N.J.S.A.* 2A:18–61.1 to 61.12. The Third Circuit considered and disposed of all of the constitutional arguments raised by Edgewater Investment Associates in this action.

## SUMMARY JUDGMENT RULINGS ON PROTECTED TENANCY STATUS APPLICATIONS

### A. *Annual Household Income*

The original list of defendants has been reduced by death, voluntary dismissal and settlement. At issue are the protected tenancy status applications of Martin Connatt, Macklin D. Rosen, Beatrice and Earle Freeman, Eva and Louis Sharpe, Hazel

Grob, Elizabeth Garbarini, Theodore Varvisotis, Anita Brown, Harriet Whitman, Morton Lesser, Marjorie and Walter Cohen and Sigmund Schwartz.

Martin Connatt filed a request for protected tenancy status on May 17, 1982; Macklin D. Rosen filed a request for protected tenancy status on June 24, 1982; Beatrice and Earle Freeman filed a request for protected tenancy status on October 3, 1982; and Eva and Louis Sharpe filed a request for protected tenancy status on June 7, 1982.

The determinate year for ascertaining each of these tenants' "annual household income" is 1981, the "last full calendar year ... at the time the tenant applies for protected tenant status ...." *N.J.S.A.* 2A:18–61.24(c). $47,571 represents three times the county per capita personal income for 1981 as set forth in *N.J.S.A.* 2A:18–61.24(c) and 2A:18–61.28(c).

■ Connatt's "annual household income" for 1981 was $59,-044; Rosen's "annual household income" for 1981 was $75,046; the Freemans' "annual household income" for 1981 was $68,546 and the Sharpes' "annual household income" for 1981 was $167,768.21. I reject these tenants' contention that business deductions or long-term capital gains should be deducted before arriving at this figure. All of these tenants would qualify for protected tenancy status if their deduction argument were sustained. However, *N.J.S.A.* 2A:18–61.24(c) provides:

> "Tenant's annual household income" means the *total income* from all sources during the last full calendar year for all members of the household who reside in the dwelling unit at the time the tenant applies for protected tenant status, *whether or not such income is subject to taxation by any taxing authority.* [emphasis supplied].

■ From the explicit language employed, I conclude that the Legislature did not intend to allow business expenses, alimony payments or long term capital gains to be first deducted before calculating an applicant's "annual household income." Had the Legislature intended such a result, it would have used appropriate language. In the absence of such wording, I find that the Legislature did not intend to have the determination of "annual

household income" turn on sophisticated tax or accounting concepts and interpretations. While remedial legislation should be liberally construed to effectuate the legislative intent, a court cannot ignore the plain meaning of the language employed by the Legislature; *Singleton v. Consolidated Freightways Corp.*, 64 *N.J.* 357, 362 (1974); nor may it permit the litigants to distort legislative intent by applying the statute in an unintended fashion. *Guttenberg Savings & Loan Ass'n. v. Rivera*, 85 *N.J.* 617, 627 (1981).

It is not within this court's province to debate the wisdom of the Legislature's choice of language or to attribute a meaning different from the words used. I conclude that the language employed is susceptible to no other reasonable interpretation and that this court's function is to effectuate the legislative intent expressed in its enactment. *Guttenberg*, 85 *N.J.* at 628. By defining "annual household income" as the "total income from all sources ... whether or not such income is subject to taxation by any taxing authority ...." I find that the Legislature elected not to allow the deductions relied upon by the tenants.

B. *Residence*

I find unpersuasive Edgewater Investment's argument that Hazel Grob lacks the necessary "residence" in the complex. Mrs. Grob is otherwise qualified and I find that she has resided in the apartment complex since 1971 and in her present apartment since 1973. That she is not the "tenant of record" since the lease is in the name of her daughter is of no moment. Mrs. Grob qualifies for protected tenancy status. N.J.S.A. 2A:18–61.24(a) and 2A:18–61.28(d).

The same conclusion follows with respect to Edgewater Investment's "residence" challenge to Elizabeth Garbarini. Mrs. Garbarini is otherwise qualified; she moved to the apartment complex in 1973 and resided in apartment 18B. She relocated to her present apartment on March 1, 1980 and I find

that she meets the necessary statutory criteria for protected tenancy status. *N.J.S.A.* 2A:18–61.24(a) and 2A:18–61.28(d).

### C. *Age*

■ Theodore Varvisotis' application for protected tenancy status is denied because he was born on September 16, 1922; his wife, Betty Jean, was born in 1928 and neither is disabled. They are ineligible for protected tenancy status because they do not meet the age eligibility criteria of *N.J.S.A.* 2A:18–61.24(a) which provides that the "senior citizen tenant" must be at least 62 years of age on the date of the conversion.

### REMAINING APPLICATIONS

■ No serious challenge has been made to the protected tenancy applications of Anita Brown, Harriet Whitman and Martin Lesser. They meet all age, residence and income qualifications and are entitled to protected tenancy status. *N.J.S.A.* 2A:18–61.24.

In view of the foregoing, I find no genuine issue as to any material fact exists with respect to the protected tenancy status applications of Martin Connett, Macklin D. Rosen, Eva and Louis Sharpe, Beatrice and Earle Freeman, and Theodore Varvisotis and grant summary judgment in favor of plaintiff Edgewater Investment Associates with respect to these tenants. *Tyson v. Groze,* 172 *N.J.Super.* 314 (App.Div.1980).

I find no genuine issue as to any material fact exists with respect to the protected tenancy status applications of Hazel Grob, Elizabeth Garbarini, Anita Brown, Harriet Whitman and Morton Lesser and grant summary judgment with respect to their applications for protected tenancy status.

### APPLICATIONS CHALLENGED AS UNTIMELY OR NOT FILED

A recounting of the sequence of relative events amply demonstrates the dilemma confronting the owner and the tenants

when the challenged Act became effective. As noted, the registration to convert, the three year notice to quit, the demand for possession and the master plan for conversion were all filed as of May 26, 1981 and the Senior Citizens and Disabled Protected Tenancy Act became effective on July 27, 1981.

The picture was further complicated by the Borough's failure to appoint an administrative agency or officer to administer the Act as required by *N.J.S.A.* 2A:18–61.26 and by the instructions appearing in the literature mailed to the tenants on October 5, 1981 by Hudson Harbour. Viewing this mailing from the tenants' perspective, I find the information was inadvertently confusing on how and where the tenants should apply for protected tenancy status. Some tenants filed applications for protected tenancy status with the Department of Community Affairs, some applied to Hudson Harbour and Marjorie and Walter Cohen and Sigmund Schwartz maintain that they applied by filing a counterclaim in this action on January 21, 1983 seeking such status.

Under these highly unusual circumstances, I conclude that the laudable goal of this remedial legislation can best be achieved by liberally construing the Act in favor of the very persons for whom this legislation was enacted. *Glover v. Simmons Co.*, 17 *N.J.* 313 (1955); *Carianni v. Schwenker*, 38 *N.J.Super.* 350 (App.Div.1955).

Using this criteria, I conclude that the applications for protected tenancy status of Marjorie and Walter Cohen and Sigmund Schwartz, whose applications have been challenged by the owner as being untimely filed or not filed at all, shall be considered at a plenary hearing in which the tenants shall present proof on all of the relevant circumstances to enable the court to determine whether or not, in light of the circumstances previously referred to, the applications shall be deemed as having been timely filed in compliance with *N.J.S.A.* 2A:18–61.-25, 27 & 28(a). The test will be whether or not under all of the existing circumstances the applications were filed within a

reasonable period of time of the date of registration of conversion.

## DISPOSITION ON PLENARY HEARING

On the basis of the testimony and the documentation received into evidence at the plenary hearing, I find that Sigmund Schwartz applied for protected tenancy status on June 6, 1982. Considering all of the relevant circumstances, his application was filed within a reasonable period of time of the date of registration conversion and shall be deemed in compliance with *N.J.S.A.* 2A:18–61.25, 27 & 28(a); the determinant year for ascertaining his "annual household income" is 1981; his "annual household income" for 1981 was $82,715. For reasons already set forth *infra*, I reject Schwartz' contention that payments made to his ex-wife pursuant to August 31, 1983 and September 30, 1977 modifications of a December 22, 1967 separation agreement must first be deducted before calculating his "annual household income."

On October 6, 1981 Marjorie and Walter Cohen received protected tenancy information from Hudson Harbour Associates pertaining to the Act and the requirements for seeking protected tenancy status.

The Cohens were fully aware of the provisions of the Act and the method of seeking protected tenancy status. They made a conscious election not to file for protected tenancy status. The Cohens were not misled by nor did they rely upon the information contained in the October 6, 1981 mailing that they could achieve this status "through the court" or by a "petition" to the court as stated in the "fact sheet" of the mailing. In these circumstances the Cohens' counterclaim filed on January 21, 1983 seeking protected tenancy status was not filed within a reasonable period of time of the date of registration of conversion and shall not be deemed in compliance with *N.J.S.A.* 2A:18–61.25, 27 & 28(a).

### DEMAND FOR COUNSEL FEES

Edgewater Investment Associates' demand for counsel fees is without merit and is denied. *R.* 4:42–9(a)(2); *Sunset Beach Amusement Corp. v. Belk*, 33 *N.J.* 162 (1960).

### SUMMARY

In summary, judgment shall be entered in favor of defendants declaring that the Senior Citizens and Disabled Protected Tenancy Act, *N.J.S.A.* 2A:18–61.22, *et seq.*, is constitutional; protected tenancy status shall be granted to Anita Brown, Harriet Whitman, Morton Lesser, Hazel Grob and Elizabeth Garbarini; protected tenancy status shall be denied Martin Connett, Macklin D. Rosen, Eva and Louis Sharpe, Beatrice and Earle Freeman, Theodore Varvisotis, Sigmund Schwartz and Marjorie and Walter Cohen; and Edgewater Investment Associates is not entitled to counsel fees.