EDGEWATER INVESTMENT ASSOCIATES, A NEW JERSEY PARTNERSHIP, PLAINTIFF-APPELLANT, v. BOROUGH OF EDGEWATER, MARTIN CONNETT, ELIZABETH GARBARINI, ANITA BROWN, HAZEL GROB, EARLE AND BEATRICE FREEMAN, HARRIET WHITMAN, MORTON LESSER, AND LOUIS AND EVA SHARPE, DEFENDANTS-RESPONDENTS, AND THEODORE VARVISOTIS, BLANCHE M. LANDER, GOODMAN SINGER, IRVING EISEN, KAROLYN SIEGEL, SARAH MCCLELLAN, MACKLIN D. ROSEN, JAMES AND HILDA HENDRYX, ADOLPH AND VERA LEITNER, PAUL AND GLORIA BELLA, SIGMUND SCHWARTZ, WALTER AND MARJORIE COHEN, MORTON AND SYLVIA SINGER, AND LESTER ESTERMAN, DEFENDANTS, AND STATE OF NEW JERSEY, INTERVENOR-RESPONDENT.

Argued February 3, 1986—Decided July 10, 1986.

*Raymond R. Wiss* argued the cause for appellant (*Winne, Banta, Rizzi, Hetherington & Basralian,* attorneys; *Raymond R. Wiss* and *Kevin P. Cooke,* on the briefs).

*Robert T. Regan* argued the cause for respondents (*McGuire & Regan,* attorneys).

*Donald M. Palombi,* Deputy Attorney General, argued the cause for intervenor-respondent (*W. Cary Edwards, Jr.,* Attorney General of New Jersey, attorney; *James J. Ciancia,* Assistant Attorney General, of counsel; *Robert M. Jaworski,* Deputy Attorney General, on the brief).

*Susan R. Oxford,* Assistant Deputy Public Advocate, argued the cause for *amicus curiae,* Public Advocate of New Jersey (*Alfred A. Slocum,* Public Advocate, attorney).

The opinion of the Court was delivered by

STEIN, J.

This case concerns the constitutionality of the Senior Citizens and Disabled Protected Tenancy Act. *N.J.S.A.* 2A:18–61.22 to –61.39 (Act). In a well-reasoned opinion, the Appellate Division upheld the statutory scheme in the face of plaintiff's assertion that the Act violated the "takings" and "contract" clauses of the United States and New Jersey Constitutions. 201 *N.J.Super.* 267 (1985).

We affirm the judgment below for substantially the reasons expressed in the opinion of Judge Baime. We write only to address three narrow issues not fully treated by the opinion below.

I

The facts and legislative background of this controversy are thoroughly set forth in Judge Baime's opinion. *Id.* at 272–77. A brief review will suffice for our purposes.

Hudson Harbour Condominium is a garden apartment complex purchased by Hudson Harbour Associates in October, 1980. Hudson Harbour sold the units at issue in this case to appellant Edgewater Investment Associates (Edgewater) on January 19, 1982.[1] By May, 1981, Hudson Harbour had completed the process of converting the apartment complex from rental housing to the condominium form of ownership. In the conversion process, Hudson Harbour had complied with the

---

[1]The record suggests that Edgewater is a reorganization of Hudson Harbour Associates, with the same general partner. Because we uphold the validity of the Act as applied retroactively, we need not reach the issue of continuity of ownership between Edgewater and Hudson Harbour Associates.

then-applicable provisions of the Anti-Eviction Act, *N.J.S.A.* 2A:18–61.1 to –61.12, 2A:18–61.15 to –61.21. The Anti-Eviction Act protected tenants faced with eviction due to condominium conversion for a period of not less than three and not more than eight years.[2]

On July 27, 1981, the Senior Citizens and Disabled Protected Tenancy Act, *L.*1981, *c.* 226, became effective. The Act significantly increased the duration of the statutory tenancy afforded to qualifying elderly or disabled tenants. To qualify, a tenant must establish that he or she is at least 62 years old or disabled, or is the surviving spouse of an eligible tenant and was at least 50 years old at the conversion date, that the dwelling has been his or her principal residence for the two years prior to conversion, and that the total household income does not exceed three times the county per capita income. *N.J.S.A.* 2A:18–61.24, –61.28. Qualified tenants are entitled to a "protected tenancy period" of 40 years from the date of conversion. *N.J.S.A.* 2A:18–61.24(h). During this period the tenant is protected from eviction by virtue of an amendment to the Anti-Eviction Act:

> No action for possession shall be brought pursuant to this subsection against a senior citizen tenant or disabled tenant with protected tenancy status pursuant to the "Senior Citizens and Disabled Protected Tenancy Act," *P.L.* 1981, *c.* 226 * * *, as long as the agency has not terminated the protected tenancy status or the protected tenancy period has not expired. [*N.J.S.A.* 2A:18–61.1(k).]

Section 14 of the Act permits its retroactive application under certain circumstances. This section was interpreted by the trial court to allow the grant of protected tenancy status to a number of the tenants in Hudson Harbour, even though Hudson Harbour's conversion was perfected approximately two months before the effective date of the Act. 201 *N.J.Super.* 286, 291 (1984). *N.J.S.A.* 2A:18–61.11(d) states as follows:

> On or after the effective date of the "Senior Citizens and Disabled Protected Tenancy Act," * * * whether by virtue of the authorization by the court of a

---

[2]An owner could regain possession after three years by providing suitable comparable housing, or after four years by paying "hardship relocation compensation" equal to five months' rent. *N.J.S.A.* 2A:18–61.10.

stay of eviction or by virtue of any other proceedings required or instituted pursuant to *P.L.*1974, *c.* 49 (C. 2A:18–61.1 *et seq.*) or *P.L.*1975, *c.* 311 (C. 2A:18–61.6 *et seq.*), or in any action for declaratory judgment, the court may invoke some or all of the provisions of the "Senior Citizens and Disabled Protected Tenancy Act" and grant to a tenant, pursuant to that amendatory and supplementary act, a protected tenancy period upon the court's determination that:

(1) The tenant would otherwise qualify as a senior citizen tenant or disabled tenant pursuant to that amendatory and supplementary act, except that the building or structure in which the dwelling unit is located was converted prior to the effective date of that amendatory and supplementary act; and

(2) The granting of the protected tenancy period as applied to the tenant, giving particular consideration to whether a unit was sold on or before the date that the amendatory and supplementary act takes effect to a bona fide individual purchaser who intended personally to occupy the unit, would not be violative of concepts of fundamental fairness or due process. Where a court declines to grant a protected tenancy status, it shall nevertheless order such hardships [*sic*] stays as authorized by subsections a. and b. of this section until comparable relocation housing is provided. The hardship relocation compensation alternative of subsection c. of this section shall not be applicable in this situation.

Judge Baime summarized this provision in affirming the judgment of the trial court:

The effect of that statute is to confer upon the judiciary the discretionary authority to recognize protected tenancy status for senior citizens even where the conversion occurred prior to the effective date of the Act. If the court declines to grant protected tenancy status, it may nonetheless issue up to five one-year stays unless comparable rental housing is provided. However, the owner does not have the option to provide hardship relocation compensation. [201 *N.J.Super.* at 276–77.]

The Appellate Division upheld the Act in the face of two constitutional challenges. First, Edgewater asserted that retroactive application of the Act to grant a 40-year protected tenancy to tenants in Hudson Harbour violated the constitutional proscription against impairment of contracts. *U.S. Const.* art. I, § 10, cl. 1; *N.J. Const.* art. IV, § VII, para. 3. Second, appellant contended that the Act imposed so unreasonably upon its property interests as to constitute a governmental taking without just compensation. *U.S. Const.* amends. V, XIV; *N.J. Const.* art. I, para. 20. Judge Baime's opinion treats these

issues cogently and thoroughly. Accordingly, we affirm on the basis of his analysis.[3]

## II

Edgewater narrows the focus of its appeal before us and, in so doing, raises issues not explicitly treated below. Appellant urges, first, that the legislative choice of 40 years for the duration of the protected tenancy period is arbitrary and unreasonable. Second, appellant contends that even if the Act is constitutionally valid as a *prospective* measure, its retroactive application is nevertheless invalid. Finally, appellant questions whether the Act sufficiently guides courts in exercising their discretion to apply the statutory provisions retroactively.

Appellant's contention that "there is absolutely no relationship between the 40-year protected tenancy period and the Act's remedial purpose" is without merit. The Legislative Findings and Declarations incorporated into the Act notes that

the forced eviction and relocation of elderly persons from their established homes and communities harm the mental and physical health of these senior citizens, and * * * these disruptions in the lives of older persons affect adversely the social, economic and cultural characteristics of communities of the State, and increase the costs borne by all State citizens in providing for their public health, safety and welfare. * * * The Legislature, therefore, declares that it is in the public interest of the State to avoid the forced eviction and relocation of senior citizen tenants wherever possible, specifically in those instances where rental housing market conditions and particular financial circumstances combine to diminish the ability of senior citizens to obtain satisfactory comparable housing within their established communities, and where the eviction action is the result not of any failure of the senior citizen tenant to abide by the terms of a lease or rental agreement, but of the owner's decision advantageously to dispose of residential property through the device of conversion to a condominium or cooperative.

The Legislature further finds that it is in the public interest of the State to avoid the forced eviction and the displacement of the handicapped wherever possible because of their limited mobility and the limited number of housing units which are suitable for their needs.

---

[3]The Appellate Division addressed a number of issues regarding the interpretation of the Act's residency and income requirements. We affirm its treatment of these questions as well.

The Legislature further declares that in the service of this public interest it is appropriate that qualified senior citizen tenants and disabled tenants be accorded a period of protected tenancy, during which they shall be entitled to the fair enjoyment of the dwelling unit within the converted residential structure, to continue for such time, up to 40 years, as the conditions and circumstances which make necessary such protected tenancy shall continue. [*N.J.S.A.* 2A:18–61.23.]

It cannot be disputed that a 40-year protected tenancy advances the salutary goal of protecting from eviction those elderly or disabled tenants who lack the financial resources to relocate. Appellant is thus constrained to argue that the Legislature's chosen match of means to ends is too extreme to be sustained. Initially, it should be noted that a tenant's protected tenancy status may be terminated upon an administrative finding that the tenant no longer meets the Act's income and primary residence criteria. *N.J.S.A.* 2A:18–61.32; *N.J.A.C.* 5:24–2.6. Further, because it will very rarely occur that an eligible tenant will survive for the full 40-year period of protection, the owner of a condominium unit will rarely find his property affected for the full period. What is evident from the Legislature's imposition of a 40-year protective period is a determination to protect elderly tenants in converted buildings during their lifetime. The 40-year period set forth in the statute was obviously intended to protect those few tenants who not only survive beyond what might be considered a normal life-expectancy, but also are able to remain as tenants in the converted building.

With this as background, we note that "[a]s is customary in reviewing economic and social regulation * * * courts properly defer to the legislative judgment as to the necessity and reasonableness of a particular measure." *United States Trust Co. v. New Jersey,* 431 *U.S.* 1, 22–23, 97 *S.Ct.* 1505, 1518, 52 *L.Ed.*2d 92, 110 (1977); *see East New York Savings Bank v. Hahn,* 326 *U.S.* 230, 234–35, 66 *S.Ct.* 69, 71, 90 *L.Ed.* 34, 37–38 (1945). Our cases have consistently affirmed the high degree of deference appropriate to evaluating the Legislature's chosen means of enhancing economic and social welfare. As we said in

*Reingold v. Harper,* 6 *N.J.* 182, 193–94 (1951), "The range of the State's discretion in promoting the security and well-being of the public 'accords with the subject of its exercise.' " (quoting *Sterling v. Constantin,* 287 *U.S.* 378, 398, 53 *S.Ct.* 190, 195, 77 *L.Ed.* 375, 386 (1932)). *See U.S.A. Chamber of Commerce v. State,* 89 *N.J.* 131, 156 (1982); *Piscataway Township Bd. of Educ. v. Caffiero,* 86 *N.J.* 308, 318–20 appeal dismissed, 454 *U.S.* 1025, 102 *S.Ct.* 560, 70 *L.Ed.*2d 470 (1981); *Robson v. Rodriguez,* 26 *N.J.* 517, 522–24 (1958).

Ultimately, appellant urges that the Legislature could have enacted a scheme that more precisely effectuated its desired ends. But the legislative approach need be only rational, not perfect. As the United States Supreme Court said in *New Orleans v. Dukes,* 427 *U.S.* 297, 303, 96 *S.Ct.* 2513, 2516, 49 *L.Ed.*2d 511, 517 (1976), "rational distinctions may be made with substantially less than mathematical exactitude." *See also Robson v. Rodriguez, supra,* 26 *N.J.* at 524 (to show a lack of rational relation of legislative means to ends, "it is not sufficient to demonstrate that the legislative object might be more fully achieved by another more expansive or inclusive classification.") (citing *New Jersey Restaurant Ass'n v. Holderman,* 24 *N.J.* 295, 299–301 (1957)). Accordingly, we hold that the Legislature's choice of a 40-year protected tenancy period for elderly or disabled tenants is not so unrelated to the Act's legitimate objectives as to require this Court's interference.

The Appellate Division held, and we affirm, that the statute's effect on contract and property rights is reasonable and substantially related to the legitimate goals of the Legislature. Appellant contends before us that the analysis undertaken by the court below, while sufficient to uphold a statute applied prospectively, is inadequate to justify the retroactive intrusion upon property and contract rights effected by the Act. Appellant argues that "a separate, more stringent determination" is appropriate for legislation with retroactive effect. We hold

that the retroactive application of the Act survives constitutional scrutiny.

Appellant bases its argument on a passage from *Usery v. Turner Elkhorn Mining Co.*, 428 *U.S.* 1, 96 *S.Ct.* 2882, 49 *L.Ed.*2d 752 (1976). In upholding application of the Federal Coal Miner Health and Safety Act of 1969 to require coal operators to compensate former employees who terminated their work in the industry before the Act was passed, the Court held that "[t]he retrospective aspects of legislation, as well as the prospective aspects, must meet the test of due process, and the justifications for the latter may not suffice for the former." *Id.* at 17, 96 *S.Ct.* at 2893, 49 *L.Ed.*2d at 767. Finding that retroactive application of the statutory scheme served to "spread the costs of the employees' disabilities to those who have profited from the fruits of their labor," the Court concluded that there was a justification for the retroactive application of the federal act. *Id.* at 18, 96 *S.Ct.* at 2893, 49 *L.Ed.*2d at 768.

The argument that *Usery* imposed a significantly higher burden on retroactive legislation than that traditionally used to evaluate prospective legislation was addressed by the Supreme Court's recent decision in *Pension Benefit Guar. Corp. v. R.A. Gray & Co.*, 467 *U.S.* 717, 104 *S.Ct.* 2709, 81 *L.Ed.*2d 601 (1984). In that case, the Court upheld the retroactive application of the Multi-Employer Pension Plan Amendments Act of 1980, which required that an employer withdrawing from a multi-employer pension plan pay to the fund an amount calculated to be the employer's proportionate share of the plan's "unfunded vested benefits." [4] The statute's retroactive application allowed pension plans to make liability assessments against employers that withdrew prior to the effective date of the act. The Court reaffirmed that

[4]The retroactive provisions of the Multi-Employer Pension Plan Amendments Act were eliminated by the Tax Reform Act of 1984. Pub.L. No. 98–369, § 558, 98 Stat. 494, 899 (1984).

> the strong deference accorded legislation in the field of national economic policy is no less applicable when that legislation is applied retroactively. Provided that the retroactive application of a statute is supported by a legitimate legislative purpose furthered by rational means, judgments about the wisdom of such legislation remain within the exclusive province of the legislature and executive branches * * *. [*Id.* at 729, 104 *S.Ct.* at 2718, 81 *L.Ed.*2d at 611.]

*See also United States Trust Co. v. New Jersey*, 431 *U.S.* 1, 17 n. 13, 97 *S.Ct.* 1505, 1515 n. 13, 52 *L.Ed.*2d 92, 106 n. 13 (1977) ("The Due Process Clause of the Fourteenth Amendment generally does not prohibit retrospective legislation, unless the consequences are particularly 'harsh and oppressive.' ") (quoting *Welch v. Henry*, 305 *U.S.* 134, 147, 59 *S.Ct.* 121, 126, 83 *L.Ed.* 87, 93 (1938)).

Our cases similarly accord deference to a legislative decision to operate retroactively. In *South Hamilton Assocs. v. Mayor & Council of Morristown*, 99 *N.J.* 437 (1985), we held the retroactive application of a rent-control ordinance to violate the contract clause when the only justification proffered for the ordinance's retroactivity was to allow the Morristown Town Council to correct a prior mistake by ratifying an action it thought it had taken six months earlier. We nevertheless broadly affirmed the sanctity from judicial intervention appropriate to rationally-grounded retroactive legislation:

> It is well-established that legislation that has as its rational public purpose the necessary protection of the health, safety, and welfare of the public, and is within the police power of the state or its subdivisions, may be applied retroactively to alter or abrogate existing contractual rights without affecting its validity under the contract clause of the United States or New Jersey Constitutions. [*Id.* at 444.]

*See also Albigese v. City of Jersey City*, 127 *N.J.Super.* 101, 112–14 (Law Div.1974) (retroactive application of rent rollback valid when purpose is to fill void created by termination of federal rent controls).

Retroactive legislation is frequently challenged as an unconstitutional impairment of contractual obligations, as was the case here and in *South Hamilton, supra.* In other contexts, our cases have reached results similarly deferential to the wisdom of the Legislature's choice to enact retroactive mea-

sures. For example, in *Rothman v. Rothman*, 65 *N.J.* 219 (1974), we rejected the contention that the Divorce Act of 1971 unconstitutionally altered existing property rights through equitable distribution. We said then:

A state may, in the exercise of the police power, enact a statute to promote the public health, safety, morals or general welfare. Such a statute, because of retroactive application or otherwise, may diminish in value or totally destroy an individual's right, whether in property as such or arising out of contract, provided that the public interest to be promoted sufficiently outweighs in importance the private right which is impaired. *Nebbia v. New York*, 291 *U.S.* 502, 54 *S.Ct.* 505, 78 *L.Ed.* 940 (1934); *Home Building & Loan Assn. v. Blaisdell*, 290 *U.S.* 398, 54 *S.Ct.* 231, 78 *L.Ed.* 413 (1934); *Day-Brite Lighting, Inc. v. Missouri*, 342 *U.S.* 421, 72 *S.Ct.* 405, 96 *L.Ed.* 469 (1952); *West Coast Hotel Co. v. Parrish*, 300 *U.S.* 379, 57 *S.Ct.* 578, 81 *L.Ed.* 703 (1937); *Village of Euclid v. Ambler Realty Co.*, 272 *U.S.* 365, 47 *S.Ct.* 114, 71 *L.Ed.* 303 (1926). In these cases, as in many others as well, the court has, after examining the importance of the public interest served by the statute and comparing it with and balancing it against the quality and value of the right affected by the retroactive legislation, reached the conclusion that the state statute in question represented a valid exercise of the police power, despite the fact that in each case there was some clear incursion upon individual private rights. [*Id.* at 225–26.]

*See also Department of Envtl. Protection v. Ventron Corp.*, 94 *N.J.* 473, 498–99 (1983) (statute's retroactive imposition of strict liability for hazardous waste spills held consistent with due process "when protection of the public interest * * * clearly predominates over * * * impairment" of private property rights).

■ A final test for the validity of the retroactive application of a statute is whether such application will result in "manifest injustice."

The essence of this inquiry is whether the affected party relied, to his or her prejudice, on the law that is now to be changed as a result of the retroactive application of the statute, and whether the consequences of this reliance are so deleterious and irrevocable that it would be unfair to apply the statute retroactively. [*Gibbons v. Gibbons*, 86 *N.J.* 515, 523–24 (1981).]

This test does not flow from constitutional requirements, but instead is based on equitable concerns. *Ventron, supra*, 94 *N.J.* at 498. The "manifest injustice" standard was further explicated in *Berkley Condominium Ass'n v. Berkley Condominium Residences*, 185 *N.J.Super.* 313 (Ch.Div.1982), a case

that also involved the retroactive application of a statute regulating condominium conversion. In upholding the validity of the law's retroactive application the court noted that the "manifest injustice" standard involves a "weighing process" similar to that espoused in *Rothman v. Rothman, supra,* 65 *N.J.* 219. *Berkley Condominium Ass'n, supra,* 185 *N.J.Super.* at 321 n.4.

We find the Act's retroactive application in this case valid under both Federal and State standards. It is indisputable that there is a rational purpose behind the retroactive application of the protected tenancy to those elderly or disabled tenants threatened with eviction by the conversion of Hudson Harbour Condominiums. Those few Hudson Harbour tenants granted protected tenancy periods are no less in need of protection from eviction than they would have been had the building been converted two months later, after the Act's effective date. We further conclude that the public interest in preventing the forced eviction of those elderly or disabled tenants who lack the resources to find alternative housing outweighs the financial interest of Edgewater Investment Associates in realizing the maximum possible profit from the condominium conversion.[5] We concur with the Appellate Division's conclusion that there is "no constitutional imperative requiring that a property owner be permitted to exploit his interest in such a way as to produce maximum profits." 201 *N.J.Super.* at 281.

We are also satisfied that the retroactive application of the Act does not work a "manifest injustice" on Edgewater. In this context, it is significant that Edgewater Investment Associates is a partnership formed to hold for investment units in Hudson Harbour condominiums. Although Hudson Harbour perfected its condominium conversion by filing the Master Deed

---

[5]Under the Act, the property owner is entitled to reasonable rent increases throughout the duration of the protected tenancy, provided that the increases are not attributable to costs arising from the conversion. *N.J.S.A.* 2A:18–61.31.

on May 26, 1981, two months prior to the effective date of the Act, the Act was introduced in the Senate on January 22, 1981. Public hearings were held, and the Senate approved the measure on February 2, 1981. Because these were professional investors acting in a heavily-regulated field at a time when further regulation was being publicly debated, we cannot find their expectations so unfairly upset as to constitute manifest injustice.

*N.J.S.A.* 2A:18–61.11(d) permits the judiciary to grant "some or all" of the Act's protections to tenants who would otherwise qualify for a protected tenancy under the Act, "except that the building or structure in which the dwelling unit is located was converted prior to the [Act's] effective date." In exercising its discretion, a court is required to determine that the granting of supplemental protections "would not be violative of concepts of fundamental fairness or due process," giving "particular consideration to whether a unit was sold on or before [the effective date of the Act] to a bona fide individual purchaser who intended personally to occupy the unit." Appellant urges that the statutory language afforded the trial court insufficient guidance in its decision to grant protected tenancy status to a number of tenants in Hudson Harbour.[6]

Preliminarily, we note that other statutory schemes involve terms no less ambiguous than "fundamental fairness," yet have been sustained when challenged on similar grounds. *See, e.g., Moyant v. Paramus,* 30 *N.J.* 528, 552–54 (1959) (licensing standard requires finding of such "business and moral character" as deemed "necessary for the protection of the public good"); *Ward v. Scott,* 11 *N.J.* 117, 122–28 (1952) (board of adjustment may recommend a variance for "special reasons" within contemplation of act); *Berkley Condominium Ass'n, supra,* 185 *N.J.Super.* at 322–23 (condominium developer can

---

[6]There is no suggestion that the statute is unconstitutionally vague. Appellant seeks a more thorough statement of the criteria to be used in determining whether to apply the Act retroactively.

rebut presumption of unconscionability attached to retaining right of first refusal by "the presentation of evidence of the existence of facts and circumstances sufficient to justify and validate [the right of first refusal]"); *In re Boardwalk Regency Casino License Application*, 180 *N.J.Super.* 324, 346–47 (App.Div.1981) (Casino Control Act licensing standard requires finding of "good character, honesty and integrity"), modified on other grounds, 90 *N.J.* 361, appeal dismissed, 459 *U.S.* 1081, 103 *S.Ct.* 562, 74 *L.Ed.*2d 927 (1982); *In re Comm'r of Banking v. Parkwood Co.*, 98 *N.J.Super.* 263, 273 (App.Div.1967) ("unworthiness and incompetency" standard for licensing of insurance agents and brokers). Indeed, "it is recognized that regulations of certain kinds of subject matter and statutes must of necessity be general." *In re Review of Health Care Admin. Bd. v. Finley*, 168 *N.J.Super.* 152, 166 (App.Div.1979), aff'd, 83 *N.J.* 67, *cert.* denied, 449 *U.S.* 944, 101 *S.Ct.* 342, 66 *L.Ed.*2d 208 (1980); *see also State v. Smith*, 46 *N.J.* 510, 518–19 (vagueness is tolerable when subject of statute does not allow for greater specificity) (citing *Boyce Motor Lines, Inc. v. United States*, 342 *U.S.* 337, 340, 72 *S.Ct.* 329, 330, 96 *L.Ed.*2d 367, 371 (1952)), *cert.* denied, 385 *U.S.* 838, 87 *S.Ct.* 85, 17 *L.Ed.*2d 71 (1966). Further, it is well settled that "[s]tatutes cannot be read in a vacuum void of relevant historical and policy considerations and related legislation." *Matawan Borough v. Monmouth County Tax Bd.*, 51 *N.J.* 291, 299 (1968); *see also Moyant v. Paramus, supra,* 30 *N.J.* at 553 ("The whole ordinance may be looked to in light of its surroundings and objectives for the purpose of deciding whether there are standards and if they are sufficient. * * * They need not be minutely detailed.").

■ In this case there can be no doubt about the propriety of the lower court's decision to apply the Act's protected tenancy period retroactively. The condominium units were purchased for investment, not residence, and it is evident that the tenants benefiting from the Act's protections are within the class contemplated by the Legislature. That trial courts are entirely

capable of recognizing situations in which retroactive application of the Act's full protections is inappropriate is evidenced by the recent case of *Radin v. Bartolomei*, 195 *N.J.Super.* 626 (Law Div.1984). In that case plaintiff purchased a unit in a cooperative apartment building, intending to occupy it personally. Approximately six months after plaintiff purchased the unit, the Act became effective, and the unit's tenant claimed the full 40-year protected tenancy period. Noting that the tenant had assets of $200,000 and yet had chosen not to purchase the unit for the "in-house" price of $26,000, the trial court granted instead a "limited protected tenancy" of up to five years. *Id.* at 632–33. The court correctly noted that the Act "was intended to protect senior citizens on fixed limited incomes who would not be able to afford to live elsewhere should they be evicted from their rental units as a result of a conversion of said unit to a condominium or cooperative," and accordingly denied the tenant the Act's full protection. *Id.* at 632.

█ We do not believe it to be either necessary or possible to anticipate every instance in which retroactive application of the Act would be appropriate. We are convinced that the courts below acted properly in the case before us. Further, the fact-sensitive analysis undertaken in *Radin, supra,* in deciding *not* to apply the Act's full protections retroactively persuades us that the standards articulated in *N.J.S.A.* 2A:18–61.11(d), in conjunction with the evident purposes of the Act as a whole, provide sufficient guidance to trial courts.

For the reasons stated, we affirm the judgment of the Appellate Division.

Chief Justice WILENTZ and Justices CLIFFORD, HANDLER, POLLOCK, and GARIBALDI, join in this opinion.

Justice O'HERN, did not participate.