586 A.2d 245

ANGELICA PHILLIPS, AS ADMINISTRATRIX AND ADMINISTRA-
TRIX AD PROSEQUENDUM OF THE ESTATE OF WALTER
PHILLIPS, DECEDENT, PLAINTIFF–APPELLANT, v. MARK
CURIALE AND CHARLES WATSON, DEFENDANTS–RESPON-
DENTS, AND FMC CORPORATION, DEFENDANT.

Superior Court of New Jersey
Appellate Division

Argued December 3, 1990—Decided January 16, 1991.

Before Judges J.H. COLEMAN, DREIER and LANDAU.

*Joseph Albanese* argued the cause for appellant (*Joseph Albanese* and *Fontanella & Benevento,* attorneys; *Joseph Albanese* and *Alfred E. Fontanella* on the brief).

*William W. Hart, Jr.,* Deputy Attorney General, argued the cause for respondents (*Robert J. Del Tufo,* Attorney General, attorney; *Michael R. Clancy,* Assistant Attorney General, of counsel; *William W. Hart, Jr.,* on the brief).

LANDAU, J.A.D.

This appeal arises from the Law Division grant of summary judgment favorable to defendants-respondents Mark Curiale and Charles Watson on the complaint of plaintiff-appellant Angelica Phillips, as Administratrix and Administratrix ad Prosequendum of the Estate of Walter Phillips, Decedent (Administratrix).[1] Administratrix sued those defendants and defendant FMC Corporation for damages allegedly arising out of injuries suffered by the late Walter Phillips (Phillips) while riding in an armored personnel carrier during a New Jersey National Guard training exercise at Fort Drum, New York. Phillips was rendered a quadriplegic as the result of this 1978 accident. Tragically, he took his own life in 1987.

The circumstances of the case were considered by the Supreme Court in 1985, *Phillips v. State, Dept. of Defense,* 98 *N.J.* 235, 486 *A.*2d 318 (1985). The Supreme Court then held that Phillips had a cause of action in tort against his two fellow Guardsmen, Curiale and Watson, 98 *N.J.* at 249–250, 486 *A.*2d 318, and that Phillips was limited in a direct action against the State to the exclusive military compensation remedy provided by *N.J.S.A.* 38A:13–1, *et seq. Phillips,* 98 *N.J.* at 250, 486 *A.*2d 318.

The Court specifically rejected the argument that the fellow employee rule of the Workers' Compensation Act, *N.J.S.A.* 34:15–8, should be deemed part of the military compensation law, *Phillips,* 98 *N.J.* at 250, 486 *A.*2d 318. It also left open for

---

[1]The judgment was certified as final, *R.* 4:42–2. Although the complaint against FMC remains open, no party has questioned the finality designation. We consider the matter because its resolution will affect the manner in which the rest of the case will proceed.

further adjudication the question whether Chapter 10 of the Tort Claims Act, which provides indemnification by the State to State employees against judgments suffered by reason of non-willful and non-fraudulent acts or omissions within the scope of employment, should be applicable in a case such as this, *see* 98 *N.J.* at 250, 486 *A.2d* 318. However, it invited the Legislature "to consider the seemingly anomalous and conflicting policies that have resulted from the retention of the military compensation law and the elimination of immunity for members of the military." *Id.* at 251, 486 *A.2d* 318.

The Legislature responded to this invitation by enacting *L.* 1987, *c.* 217, which brought military compensation law into closer harmony with workers' compensation law. It provided, among other things, that:

> Any person who becomes a member of the organized militia of the State of New Jersey shall be deemed to have surrendered his right to any other method, form or amount of compensation or determination thereof from the State or the organized militia, other than as provided in this chapter for any injury or death occurring to him in line of duty. Such entry into the militia shall bind the member's personal representative, surviving spouse and next of kin, as well as the State of New Jersey and the organized militia.

> Neither the State, the organized militia nor any member of the organized militia shall be liable to anyone at common law or otherwise for an injury or death compensable under this chapter, including any injury or death that results from an act or omission occurring while the member was in the same service of the organized militia as the person whose actions caused that injury or death, except for injury or death caused by an intentionally wrongful act of a comember.

*N.J.S.A.* 38A:13–1.2.

The Public Safety and Defense Committee Statement to this legislation included the following:

> This bill ... eliminates the liability of the State, National Guard and its members for injury or death occurring in the line of duty, except as provided under the military compensation law and except for injury or death due to an intentionally wrongful act by a member....

The Legislature also addressed the question of the cases to which the *L.* 1987, *c.* 217 amendments would be applicable:

> This act shall take effect immediately and shall be applicable to all actions and proceedings that accrue, *are pending* or are filed after June 1, 1986. (Emphasis added).

We are called upon now to consider whether it was correct for the trial judge to apply retroactively the amendments to *N.J.S.A.* 38A:13–1, *et seq.,* enacted by the Legislature as *L.* 1987, *c.* 217.

Administratrix's arguments, some of which overlap, may be broadly summarized as follows:

(1) That *N.J.S.A.* 38A:13–1.2 does not apply to Phillips' case as a matter of statutory construction; (2) that even if applicable, that statute should not be given retroactive effect because of manifest injustice arising from her detrimental reliance upon the Supreme Court opinion (citing *Edgewater Inv. Associates v. Borough of Edgewater,* 103 *N.J.* 227, 510 *A.*2d 1178 (1986) and *Kruvant v. Mayor and Council Tp. of Cedar Grove,* 82 *N.J.* 435, 414 *A.*2d 9 (1980)); (3) that by reason of *N.J.S.A.* 1:1–14 and 15, as well as applicable decisional law, a substantive cause of action cannot be destroyed retroactively by statute; (4) that the Legislature's response to the Supreme Court's decision in *Phillips* unconstitutionally encroaches upon the judiciary; (5) that the amendatory statute denied equal protection to Phillips and was targeted at this specific case, thereby constituting special legislation prohibited by Art. IV, Sec. 7, ¶ 7 and ¶ 8 of the New Jersey Constitution; and (6) that Administratrix should be entitled to broad discovery to explore the contention that the Office of the Attorney General was principally responsible for drafting and initiating introduction of *L.* 1987, *c.* 217.

Upon consideration of these arguments in light of the briefs and applicable law, we conclude that the judgment should be affirmed substantially for the reasons expressed by Judge Mandak in his oral opinion of March 10, 1989, and written opinion of July 14, 1989.

 We add the following comments. Initially, we note that the Administratrix's assumption that the Phillips' case was the only pending claim which could have been contemplated by the Legislature when it enacted *L.* 1987, *c.* 217 has been vigorously disputed by the Deputy Attorney General assigned to this

matter. He represented to Judge Mandak and to this court at oral argument that there were not only two lawsuits, but a number of other analogous potential claims pending, which "didn't later materialize," as of the June 1986 effective date of that legislation. As all actions and proceedings accrued, pending or filed after June 1, 1986 were expressly included, we do not view this as an unconstitutional classification nor as special legislation. *See also Mahwah Tp. v. Bergen County Bd. of Taxation*, 98 *N.J.* 268, 283, 486 *A.*2d 818 (1985), *cert. denied*, 471 *U.S.* 1136, 105 *S.Ct.* 2677, 86 *L.Ed.*2d 696 (1985); *Darmetko v. Electron Technology*, 243 *N.J.Super.* 536, 542, 580 *A.*2d 1087 (App.Div.1990); *Clark v. Byrne*, 165 *N.J.Super.* 98, 105, 397 *A.*2d 719 (Law Div.), *aff'd*, 165 *N.J.Super.* 16, 397 *A.*2d 685 (App.Div.1978).

The *Phillips* opinion did not resolve the question whether an injured party unable to prevail in a direct action against the State can accomplish that result indirectly by reason of the indemnification provision in *N.J.S.A.* 59:10–2. To the contrary, the Court expressly used the word "may," and noted that it was "not asked to resolve that question in this case." *Id.* 98 *N.J.* at 250, 486 *A.*2d 318. Instead, in the immediately following sentence it invited the Legislature to address the statutory anomalies. *Id.* at 250–251, 486 *A.*2d 318. This the Legislature did, unambiguously expressing its retroactive effect. Thus, we do not agree that Phillips' claim against his fellow employees, and through them the State by way of indemnification, could be deemed clearly to have "vested" prior to 1986, as distinct from being a "pending" claim at the time of the retroactive enactment of *L.* 1987, *c.* 217.

Phillips and his estate have not been deprived of any remedy. Rather, as in an analogous workers' compensation proceeding, a no-fault, certain remedy has been provided by the military compensation law. Moreover, the claim against FMC Corporation remains unaffected. These factors were appropriately weighed in determining whether a manifest injustice has

resulted. On this issue, as Justice O'Hern observed in his concurring and dissenting opinion in *Phillips*, 98 *N.J.* at 254–255, 486 *A.*2d 318, existing federal precedent would not have afforded to Administratrix the right to sue fellow members of the military had Phillips been on duty with a branch of the United States Armed forces when injured in 1978. Effective after December 29, 1981, Congress included National Guard members engaged in training within the definition of "employee of the government" for purposes of the Federal Tort Claims Act, 28 *U.S.C.A.* § 2671. The *Phillips'* Court was presumably aware of this when it invited corrective legislation by our Legislature. It is unlikely that such express invitation would have been made for a meaningless purpose, and so retroactivity was probably contemplated.

Moreover, the Legislature's action must be interpreted consistently with its policy of retaining sovereign immunity except where expressly surrendered, and in light of its recognition of the public interest to be served by harmonizing the policies of the workers' compensation and military compensation statutes. *See Edgewater Inv. Associates, supra,* 103 *N.J.* at 239–240, 510 *A.*2d 1178.

■ We recognize Administratrix's argument that manifest injustice arises from the substantial expenditures of time and money said to have been made in reliance upon the Supreme Court's opinion and before the Legislature's 1987 response. The essence of inquiry in this regard is whether the consequences of that reliance are so deleterious and irrevocable that it would be inequitable to apply the statute retroactively. *Gibbons v. Gibbons,* 86 *N.J.* 515, 523, 432 *A.*2d 80 (1981); *Fasching v. Kallinger,* 227 *N.J.Super.* 270, 274–275, 546 *A.*2d 1094 (App. Div.1988), *certif. denied,* 114 *N.J.* 505, 555 *A.*2d 623 (1989). However, the weighing process must take into account the public policies and interests affected, *Edgewater Inv. Assoc., supra,* 103 *N.J.* at 239–240, 510 *A.*2d 1178. There is more indulgence to uphold retroactive application of a statute where

its primary purpose is to affect public interests. *Hart v. Fox,* 204 *N.J.Super.* 564, 572, 499 *A.*2d 553 (Law Div.1985); *Sutherland Stat. Const.* § 41.05 (4th ed.). Here the public interest involves more than the correction of inconsistencies of treatment between similarly situated groups of state employees. It involves the kind of intolerable military consequences considered in *Feres v. United States,* 340 *U.S.* 135, 71 *S.Ct.* 153, 95 *L.Ed.* 152 (1950) and *Jaffee v. United States,* 663 *F.*2d 1226 (3d Cir.1981), *cert. denied,* 456 *U.S.* 972, 102 *S.Ct.* 2234, 72 *L.Ed.*2d 845 (1982), respecting the availability of a civil forum for redress of negligent orders or acts committed in the course of military action. *See Phillips, supra,* 98 *N.J.* at 255, 486 *A.*2d 318 (concurring and dissenting opinion). We must accept the Legislature's judgment in this regard, unless constitutionally offensive. It is also appropriate to note that Administratrix elected to ignore the Court's recommendation to proceed first with the administrative remedy against the Department of Defense, *see id.* at 253, 486 *A.*2d 318, in order to establish whether there was a causal relationship between the injury and the military incident.

As to the constitutional argument, which hinges on whether enforcement of retroactive application of *N.J.S.A.* 38A:13–1.2 destroys "vested" rights, we observe that the due process clause does not prohibit such retroactive legislation unless particularly harsh and oppressive. *State, Dept. of Environ. Protect. v. Ventron Corp.,* 94 *N.J.* 473, 499, 468 *A.*2d 150 (1983); *Pennsylvania Greyhound Lines, Inc. v. Rosenthal,* 14 *N.J.* 372, 381, 102 *A.*2d 587 (1954). Here, too, the factors of salutary public policy and interest are decisive, particularly as the Administratrix has not been left without remedy. Moreover, the Supreme Court has recognized the power of the Legislature to wipe out a claim existing under a prior statute at any time *prior to entry of a final judgment. A. & B. Auto Stores of Jones St., Inc. v. Newark,* 59 *N.J.* 5, 22, 279 *A.*2d 693 (1971).

Even if the Legislature had not specifically addressed the question of retroactivity, affirmance would be warranted under the "time of decision" rule, *see Kruvant, supra,* 82 *N.J.* at 442, 414 *A.*2d 9, which likewise implicates questions of public policy.

In short, the expenditure of lawyers' time and investigatory and expert costs in reliance upon the dubious continuation of a given state of the law and the election to ignore the administrative military remedy, while unfortunate, was not in this case a concern of sufficient compelling dimension to overturn the plain intention of the Legislature.

Finally, we emphasize our agreement with Judge Mandak's determination to deny discovery respecting the role of the Attorney General's Office. For purposes of summary judgment, it may be assumed that the Attorney General's Office did indeed play a principal role in drafting and encouraging sponsorship and adoption of the 1987 amendment. We see this as consistent with the Attorney General's role in communicating to the Legislature the strong invitation of the Supreme Court for legislative action. Ultimately it is the Legislature, of course, which determines whether to adopt or reject any proposed legislation. It is a matter of common knowledge that requests for legislative action may be initiated from many sources, including private parties, regulated industries and all departments within the executive branch. We see no impropriety in an executive branch effort to get the Legislature to address the anomalies pointed up in *Phillips* pursuant to the Court's invitation. Neither did the legislative action usurp the judicial power. To the contrary, it acted pursuant to judicial invitation in the face of an inexplicable policy anomaly.

Affirmed.